No. 59,025

CECIL W. BAKER, *Appellant*, v. CITY OF GARDEN CITY, A Municipal
Corporation, and THE SECRETARY OF TRANSPORTATION OF KANSAS,
*Appellees*.

(731 P.2d 278)

Opinion filed
January 16, 1987.

*Phyllis F. Wendler*, of Law Offices of Michael J. Friesen, P.A., of Garden City,
argued the cause and was on the briefs for appellant.

*B. G. Larson*, of Williams, Larson, Strobel, Estes & Malone, P.A., of Dodge
City, argued the cause, and *Gregory J. McDonald*, city attorney, was with him on
the brief for appellee City of Garden City.

*Jay L. Smith*, office of chief counsel, argued the cause, and *Michael B. Rees*,
chief counsel, and *Kris E. McKinney*, of the same office, were with him on the
brief for appellee Kansas Department of Transportation.

The opinion of the court was delivered by

HOLMES, J.: This is a personal injury suit arising out of a controlled intersection traffic accident which occurred on the outskirts of Garden City, Kansas. At the close of plaintiff's case, the trial court directed a verdict in favor of the defendants, the City of Garden City, Kansas, (Garden City or the City), and the Kansas Department of Transportation (KDOT). Plaintiff, Cecil W. Baker, appeals.

The accident occurred at the intersection of United States Highway 83 and Mary Street on the western edge of Garden City. At this location the highway consists of two lanes running north and south with one lane of traffic in each direction. East of the intersection Mary Street is a divided four-lane east and west city thoroughfare with two lanes of traffic in each direction. West of the intersection Mary Street is a two lane county road with one lane of traffic in each direction. Traffic at the intersection was formerly controlled by stop signs for the east-west traffic on Mary Street. Traffic on U.S. Highway 83 was not required to stop. In November of 1980 a fatal accident occurred at the intersection and in response to this tragedy Garden City officials decided to replace the stop signs with four-way electric signals. The City contacted KDOT regarding the installation of temporary signals during construction and it is disputed whether KDOT approval was given for temporary signalling. It is clear that no written approval had been obtained from KDOT. See K.S.A. 8-2002(b). During mid-December the City installed four temporary signals which were hung in the intersection from wires strung between poles at each corner and the stationary stop signs for Mary Street traffic were removed. At the time the temporary signals were emplaced, their installation did not meet the standards specified in the Uniform Manual of Traffic Control. Although a diagram of the installation was sent to KDOT, the inadequate nature of the signals apparently was not discovered by KDOT until after the plaintiff's accident.

On the day of the accident, an eighteen-wheel tractor-trailer, loaded with sheep, driven by Clyde Tyson was southbound on Highway 83 approaching the Mary Street intersection. At the same time, Eldon Wagner sat in his westbound vehicle at the intersection waiting for the temporary light to turn green in his direction. Behind the Wagner vehicle were Robert and Beverly Chartier in their car, also waiting for the light to change. Cecil W.

Baker, in his pickup truck, was northbound on Highway 83 approaching the intersection. As the light turned green for east-west traffic, the Wagner vehicle moved into the intersection. Simultaneously, the southbound tractor-trailer ran the red light and struck the Wagner vehicle in the passenger's side, spinning it back into the eastbound lane of Mary Street. The Tyson truck careened on down the highway, collided with Baker's pickup truck, and came to rest on its side with the cab of the truck on the Baker vehicle.

Baker suffered serious injuries as a result of the accident. He required hospitalization for three weeks following the accident, including two operations to refabricate one knee. Plaintiff filed suit against the trucking company which operated the truck, its insurance carrier, the driver Tyson, the City of Garden City, the Board of County Commissioners of Finney County, and the Kansas Department of Transportation. Prior to trial the County was granted summary judgment and no appeal is taken from that ruling. The defendant trucking company, its insurance carrier, and Tyson settled with plaintiff and were dismissed from the action. The case went to trial on the issue of the negligence of the City and KDOT in erecting the temporary traffic signals. At the close of the plaintiff's case, the trial court sustained the defendants' motions and directed verdicts in their favor. Baker has appealed.

The only issue raised on appeal is the plaintiff's contention that the trial court improperly directed a verdict for the defendants.

In ruling on a motion for a directed verdict pursuant to K.S.A. 60-250, the trial court is required to resolve all facts and inferences reasonably to be drawn from the evidence in favor of the party against whom the ruling is sought, and where the evidence is such that reasonable minds could reach different conclusions thereon, the motion must be denied and the matter submitted to the jury. *Denison State Bank v. Madeira*, 230 Kan. 684, Syl. ¶ 1, 640 P.2d 1235 (1982). In reviewing a directed verdict the appellate court will apply the same rule on appeal that was required in the trial court, *Fisher v. Sears, Roebuck & Co.*, 207 Kan. 493, 495, 485 P.2d 1309 (1971), and if the evidence is such that reasonable minds could reach different conclusions then the verdict should be reversed. *Stair v. Gaylord*, 232 Kan. 765, 769, 659 P.2d 178 (1983).

Thus, the issue in the present case is whether Baker presented a prima facie case of negligence at trial. Prima facie evidence denotes evidence which, if left unexplained or uncontradicted, would be sufficient to carry the case to the jury and sustain a verdict in favor of the plaintiff on the issue it supports. *Van Brunt, Executrix v. Jackson*, 212 Kan. 621, 623, 512 P.2d 517 (1973). In a negligence case the plaintiff must establish a duty of reasonable care owed by the defendant to the plaintiff, a breach of that duty, damage to plaintiff, and a causal connection between the duty breached and the damage sustained. *Durflinger v. Artiles*, 234 Kan. 484, 673 P.2d 86 (1983). In order to recover in a negligence action, the breach of duty must be the actual and proximate cause of the injury. The proximate or legal cause of an injury is that cause which in natural and continuous sequence, unbroken by an efficient intervening cause, produces the injury and without which the injury would not have occurred, the injury being the natural and probable consequence of the wrongful act. *Wilcheck v. Doonan Truck & Equipment, Inc.*, 220 Kan. 230, 235, 552 P.2d 938 (1976).

Whether conduct in a given case is the cause in fact or proximate cause of plaintiff's injuries is normally a question of fact for the jury. *Durflinger v. Artiles*, 234 Kan. at 488; *Steele v. Rapp*, 183 Kan. 371, 379, 327 P.2d 1053 (1958). However, where the facts are such that they are susceptible to only one inference, the question is one of law and may be disposed of summarily by the court when the plaintiff has failed to establish the necessary burden of proof. 57 Am. Jur. 2d, Negligence § 137.

In the present case it was the position of the defendants that even if the temporary signals were not properly installed and timed, there was no showing that such defects were the cause of Tyson's running the red light and the resultant collision with Mr. Baker's truck. The trial court reviewed the evidence, prior to directing verdicts for the defendants, and stated:

"The city and the Department of Transportation have made a motion to this Court for a directed verdict. The city and department state that there is no evidence presented to indicate that either the city or the department were at fault in the injuries sustained by Mr. Baker.

"*Van Brunt Executrix versus Jackson,* 212 Kansas 69—or excuse me—621, 1973 case, states that when such a motion is made 'the issue is whether the plaintiff has made a prima facie case. "Prima facie" denotes evidence which, if

unexplained or uncontradicted, is sufficient in a jury case to carry the case to the jury and to sustain a verdict in favor of the issue upon which it supports, but which may be contradicted by other evidence . . . .'

"As such the question becomes whether or not the plaintiff has made a prima facie case as to the 'actionable negligence' of the defendants. 'Actionable negligence' is the lack of care which caused or contributed to the event which brought about the injury or damage for which claim is made.

"With these considerations in mind, the evidence presented must be examined.

"At this point in time revol- — resolving all fact questions in the favor of the plaintiff, the plaintiff has presented at least a prima facie case as to the following: number one, the city did not exercise ordinary care in the signalization of the intersection; number two, the driver of the cattle truck, Mr. Tyson, did run a red light at that intersection; number three, Mr. Baker was severely injured and still suffers from the injuries received; number four, the accident was every bit as severe and horrendous as related by the Chartiers and Mr. Zerr. Their concerns were entirely valid.

"These prima facie showings, however, do not in and of themselves entitle the case to go to the jury. There still must be a showing of proximate cause. In other words there still must be a showing that the negligence on the part of the city and state was 'actionable negligence.' As stated in the terms of the law, there must be a prima facie showing that the lack of ordinary care caused or contributed to the event which brought about the injury or damages for which the claim is made.

"In arguing the motion the plaintiff correctly stated that violation of safety statutes such as requirements contained in the uniform manual was and can be considered negligence per se. This, however, is not dispositive of the issues in that even negligence per se must be the proximate cause of the injuries.

"In arguing the motion the plaintiff stated that there was no evidence of any negligence on the part of the truck driver and that his negligence should not be compared. The plaintiff stated that the truck driver is not a party to this suit and cannot be considered.

"The truck driver may not at the present time be exposed in terms of liability. The truck driver, however, must be compared when determining what and who caused the injuries of Mr. Baker. The actual physical force applied to Mr. Baker came from the truck driven by Mr. Tyson. What caused Mr. Tyson to strike Mr. Baker is the issue. This consideration is the foundation for a prima facie showing of proximate cause.

"All that is known about the driver's action is that he ran the red light, and there is some indication that he may not have seen the light. There is no further testimony or evidence attributed to Mr. Tyson and the circumstances in which he found himself on that fateful day. Did he see the light but failed to stop because of fatigue? Was he daydreaming? Was his attention distracted by a roadside object? Was there a mechanical malfunction when he tried to stop? Or did he see the light but due to improper sequence was unavailable — or unable to stop no matter what he did?

"These things, perhaps others, the Court will never know as Mr. Tyson did not elaborate. Within the facts of this case, Mr. Tyson is the critical link of proximate cause. At this stage proximate cause can only be speculated upon. The defend-

ants are not required to supply this link. This is an adversary proceeding. Further, this is not a res ipsa loquitur situation. There are too many variables not answered by the evidence presented.

"Mr. Baker suffered greatly by this accident, and it was brought about through absolutely no fault of his own. However, without a showing of proximate cause, Kansas law will not allow a recovery.

"The city's motion, joined by the Kansas Department of Transportation, is granted in the sense that there has been no showing of proxi—proximate cause as it relates to the acts of the city or state."

The trial court, while finding negligence in the improper installation of the temporary signals, also found that plaintiff had failed to show any causal connection between that negligence and the injuries and damage suffered by plaintiff. The plaintiff had the burden of proving that the negligence of the City and/or KDOT caused the damage suffered by the plaintiff. See *Little v. Butner*, 186 Kan. 75, 79, 348 P.2d 1022 (1960); *Kreh v. Trinkle*, 185 Kan. 329, 340, 343 P.2d 213 (1959). The burden of proof required of the plaintiff on the issue of causation is summarized in Prosser and Keeton on Torts § 41, pp. 269-70 (5th ed. 1984) as follows:

"The plaintiff must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result. A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant. Where the conclusion is not one within common knowledge, expert testimony may provide a sufficient basis for it, but in the absence of such testimony it may not be drawn. . . .

"The plaintiff is not, however, required to prove the case beyond a reasonable doubt. The plaintiff need not negative entirely the possibility that the defendant's conduct was not a cause, and it is enough to introduce evidence from which reasonable persons may conclude that it is more probable that the event was caused by the defendant than that it was not. The fact of causation is incapable of mathematical proof, since no one can say with absolute certainty what would have occurred if the defendant had acted otherwise. Proof of what we call the relation of cause and effect, that of necessary antecedent and inevitable consequence, can be nothing more than 'the projection of our habit of expecting certain consequents to follow certain antecedents merely because we had observed these sequences on previous occasions.' If as a matter of ordinary experience a particular act or omission might be expected, under the circumstances, to produce a particular result, and that result in fact has followed, the conclusion may be permissible that the causal relation exists."

The testimony at trial, viewed in the light most favorable to the plaintiff, indicated that the wind was blowing from the north, causing the traffic signals to tilt and be difficult to see. A witness

stated that when a vehicle approached the intersection from the north, the signal light hanging in the middle of the road was obscured by and blended in with the surrounding terrain. Further, lay testimony at trial revealed that the amber warning signal was lit for a very short period of time, creating a rapid transition from the green to red signal. Witnesses testified Tyson approached the intersection at 45 to 50 miles per hour and made no attempt to stop prior to the collision with the Wagner vehicle. Baker also offered expert testimony by Dr. John Glennon on the subject of signal light timing, stopping distances, reaction time, and related matters. Dr. Glennon basically stated that the shorter the time of the amber light the greater the danger of intersection collisions. No cases have been cited by counsel to support the granting or denial of a directed verdict on these facts, and research has revealed no case on all fours. For cases with somewhat similar facts see *Ferri v. City of Gainesville*, 362 So. 2d 345 (Fla. Dist. App. 1978); *Fraley v. City of Flint*, 54 Mich. App. 570, 221 N.W. 2d 394 (1974); *Stevenson v. State of Oregon*, 42 Or. App. 747, 601 P.2d 854 (1979).

We concur with the trial court that there was insufficient evidence to establish that the timing and/or improper installation of the temporary traffic signals caused Tyson's failure to stop. It would be sheer speculation to conclude that some defect in the installation and function of the temporary signal caused Tyson to fail to see the signals in time to stop his vehicle and avoid the crash. There were at least three signs warning approaching traffic of a reduced speed zone and traffic controls ahead. Why Tyson ignored them will probably never be known. There is nothing in the record to indicate there would have been any different result if the signals had been properly installed and if the yellow sequence on the signal had been longer. It is indeed unfortunate that the plaintiff has suffered severe injury and damage, but that alone does not justify recovery from these defendants.

The judgment is affirmed.

ALLEGRUCCI, J., not participating.

SCHROEDER, C.J., dissenting: The thrust of the majority opinion as written will be misleading to the bench and bar. If justice is to prevail under the comparative negligence statute enacted by the legislature, cases such as this must be treated and tried as comparative negligence cases with all parties involved in the

incident and contributing to the damages and injury available for the determination of comparative fault. See the discussion of comparative negligence in *Ellis v. Union Pacific R.R. Co.*, 231 Kan. 182, 643 P.2d 158 (1982), and in my dissenting opinion in *Wooderson v. Ortho Pharmaceutical Corp.*, 235 Kan. 387, 421, 681 P.2d 1083, *cert. denied* 469 U.S. 965 (1984).

HERD, J., dissenting: I respectfully disagree with the majority for the following reasons. In this case a truck with a semi-trailer ran through an illuminated stop signal, causing the accident and resulting injury. It is uncontroverted the stop signal was not up to standard and was improperly installed. Evidence was introduced that wind caused the signal to sway, obscuring the signal lights. Also, evidence was submitted that the caution cycle on the signal was abnormally short, making it difficult for an oncoming vehicle to stop before reaching the intersection.

It is well-settled law in this state that a cause of action may be proved by circumstantial evidence, and such evidence, in order to be sufficient to sustain the verdict of a jury, need not rise to that degree of certainty which will exclude any and every other reasonable conclusion. Proximate causation in a proper case may be shown by circumstantial evidence. *Farmers Ins. Co. v. Smith*, 219 Kan. 680, 688-89, 549 P.2d 1026 (1976); *Casey v. Phillips Pipeline Co.*, 199 Kan. 538, 431 P.2d 518 (1967). Further, this court has consistently held that whether there is a causal connection between a breached duty and an injury sustained is a question of fact to be determined by the jury. *Durflinger v. Artiles*, 234 Kan. 484, 488, 673 P.2d 86 (1983); *Schmeck v. City of Shawnee*, 232 Kan. 11, 27, 651 P.2d 585 (1982); *Stucky v. Johnson*, 213 Kan. 738, 739, 518 P.2d 937 (1974).

The evidence of a defective signal combined with the failure to stop affords a reasonable basis for the conclusion that more likely than not the faulty signal caused the accident. That makes a prima facie case of negligence on the part of those charged with the responsibility for traffic control. The burden of going forward with the evidence then shifts to the defendants. It is their responsibility to bring in the truck driver and show that his negligence, independent of the traffic signal, caused the accident, or prove the traffic signal was not faulty. Thereafter, the jury would compare the fault of all and determine percentages. I would reverse the trial court and proceed with the trial.