No. 62,579

BONNIE HAMMIG, *Appellant,* v. THOMAS FORD, *Appellee.*

(785 P.2d 977)

Opinion filed January 19, 1990.

*Joseph R. Ebbert,* of Niewald, Waldeck, Norris & Brown, of Overland Park, argued the cause, and *Stephen S. Brown* and *Catherine R. Hutson,* of the same firm, were with him on the brief for the appellant.

*Jerome V. Bales,* of Wallace, Saunders, Austin, Brown & Enochs, Chartered, of Overland Park, argued the cause, and *Kenton M. Hall,* of the same firm, was with him on the briefs for the appellee.

The opinion of the court was delivered by

MILLER, C.J.: This is a wrongful death case brought by Bonnie Hammig against Thomas Ford. The District Court of Johnson County granted summary judgment in favor of defendant Ford. The propriety of that order is the controlling issue before us.

### FACTUAL BACKGROUND

Thomas Ford was driving north on Metcalf Avenue in Overland Park, Kansas, on November 21, 1985. James Brooks was driving south on the same thoroughfare. Brooks, in making a left turn onto 107th Street, collided with the Ford vehicle. Brooks fled the scene by proceeding east on 107th. As soon as it was apparent

to Ford that Brooks was not going to stop, he followed Brooks in order to obtain his license number.

Shortly east of Metcalf, 107th Street makes an S curve; thereafter, it is straight all the way to Lamar, one-half mile east of Metcalf. The two cars sped east on 107th, with speeds reaching 60 miles per hour, although the speed limit was 30 or 35 miles per hour. Neither Brooks nor Ford remembers any other traffic on 107th. Brooks testified by deposition that, after about a block, he became aware that Ford was following him, but that was not why he was speeding; he was determined to leave the scene and go to Missouri. He did not want to be arrested for driving without a license.

Even though Brooks had a head start, Ford was able to catch up to him and to read his license number. Ford then pulled over to the side of the street, about a half block west of Lamar, to write down the number. Brooks, however, did not stop or slow down. He proceeded to speed into the four-way stop intersection at Lamar, and in doing so collided with another vehicle in which Bret Hammig was a passenger. Hammig died of injuries sustained in the crash.

This action is brought by Hammig's widow and sole heir, Bonnie Hammig, individually and as administratrix of his estate. Suit was commenced against Brooks; Brooks' parents, who were the owners of the car he was driving; and Ford. Summary judgment was entered in favor of Brooks' mother. Later, plaintiff's claims against Brooks and his father were settled, and an order was issued dismissing those claims with prejudice. The orders relating to the claims against Brooks and his parents are final, and no appeal has been taken from them.

## DISTRICT CQURT'S DISPOSITION

Defendant Ford moved for summary judgment, and the trial court agreed, finding

"that there are no material issues of fact remaining, and that reasonable minds cannot differ as to the fact that the actions or inactions of defendant Ford did not in any way cause or contribute to cause the collision between the Brooks and Hammig vehicles. Therefore, the Court finds that the defendant Ford is entitled to judgment as a matter of law."

Plaintiff appealed.

## COURT OF APPEALS' DISPOSITION

The Court of Appeals, in an unpublished opinion filed June 2, 1989, reversed. After setting forth the facts and the rules relating to the entry of summary judgment, the opinion states:

"To recover in a negligence action a plaintiff must establish the following: (1) a duty owed by the defendant to the plaintiff; (2) defendant breached that duty; (3) plaintiff was damaged; (4) the breach of duty was a cause in fact of the damage; (5) and the breach of duty was the 'proximate' or 'legal' cause of the damage. *Baker v. City of Garden City,* 240 Kan. 554, 557, 731 P.2d 278 (1987).

"Proximate cause has been defined as follows:

" 'The proximate or legal cause of an injury is that cause which in natural and continuous sequence, unbroken by an efficient intervening cause, produces the injury and without which the injury would not have occurred, the injury being the natural and probable consequence of the wrongful act. [Citation ommitted.]' *Baker,* 240 Kan. at 557.

"Generally, drivers have a duty to operate their motor vehicles in the same manner as a prudent driver would do and whether they have done so is ordinarily a question of fact to be determined by the jury in light of all the evidence. *Drennan v. Penn. Casualty Co.,* 162 Kan. 286, 288, 176 P.2d 522 (1947). Failure to use that degree of care and caution which an ordinary careful and prudent person would exercise under same or similar circumstances is negligence. *Morris v. Hoesch,* 204 Kan. 735, 738, 466 P.2d 272 (1970).

"Viewing the record in the light most favorable to the plaintiff as the nonmoving party, we conclude it was reversible error for the district court to grant summary judgment for defendant because there exists a genuine issue as to the proximate cause of the collision."

We granted Ford's petition for review.

## RULES RELATING TO SUMMARY JUDGMENTS

A party seeking summary judgment bears a heavy burden. The trial court is required to resolve all inferences which may reasonably be drawn from the evidence in favor of the party against whom summary judgment is sought. Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The party opposing summary judgment has the affirmative duty to come forward with facts to support its claim, although it is not required to prove its case. If factual issues exist, they must be material to the case to preclude summary judgment.

The same rules apply on appeal. The appellate court is required to read the record in the light most favorable to the party who defended against the motion for summary judgment. Summary judgment must be found improper where the appellate court finds that reasonable minds could differ as to the conclusions drawn from the evidence. *Mick v. Mani,* 244 Kan. 81, 83, 766 P.2d 147 (1988); see *Bacon v. Mercy Hosp. of Ft. Scott,* 243 Kan. 303, 306-07, 756 P.2d 416 (1988).

The trial judge, a reasonable person, concluded that the evidence led to but one conclusion: that Ford's actions or inactions "did not in any way cause or contribute to cause the collision between the Brooks and Hammig vehicles." Judges of a Court of Appeals panel, reasonable people, upon consideration of the same evidence, came to a conclusion that "there exists a genuine issue as to the proximate cause of the collision." As reasonable minds differ on the conclusion to be drawn from the evidence, summary judgment must be deemed improper unless our independent review of the record shows that Ford is entitled to judgment as a matter of law. Although summary judgment is seldom proper in negligence cases, it is proper if the plaintiff fails to provide evidence of an element essential to his case. *Bacon v. Mercy Hosp. of Ft. Scott,* 243 Kan. at 307.

## NEGLIGENCE CASES

The plaintiff in a negligence case must establish these essential elements:

(1) A duty of reasonable care owed by the defendant to the plaintiff;

(2) a breach of that duty;

(3) damage to the plaintiff; and

(4) a causal connection between the duty breached and the damage sustained.

See *Baker v. City of Garden City,* 240 Kan. 554, 557, 731 P.2d 278 (1987) (citing *Durflinger v. Artiles,* 234 Kan. 484, 673 P.2d 86 [1983]). The *Baker* opinion also states:

"[T]he breach of duty must be the actual and proximate cause of the injury. The proximate or legal cause of an injury is that cause which in natural and continuous sequence, unbroken by an efficient intervening cause, produces the injury and without which the injury would not have occurred, the injury being the natural and probable consequence of the wrongful act. *Wilcheck*

*v. Doonan Truck & Equipment, Inc.,* 220 Kan. 230, 235, 552 P.2d 938 (1976)." 240 Kan. at 557.

In *Baker,* plaintiff sustained personal injuries when a tractor-trailer ran a red light and struck the Baker vehicle. Baker brought suit against the truck driver, the truck owner, its insurance carrier, the county, the city, and the Kansas Department of Transportation. The first three settled; the county was granted summary judgment; and, at the close of trial, the judge granted a directed verdict in favor of the city and KDOT. Plaintiff appealed the directed verdict, claiming that improper timing and installation of the traffic lights by the city and KDOT caused or contributed to the collision. Noting that whether conduct is the proximate cause of a plaintiff's injuries is normally a question of fact for the jury, we nevertheless affirmed. We held there was no evidence in the record to indicate that either the timing or the installation of the signal lights caused the truck driver's failure to stop. Thus, there was insufficient evidence to permit the causation issue relating to the city or KDOT to go to the jury.

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Hammig argues that Brooks' credibility is a genuine issue of material fact. Ford, in the memorandum in support of his motion for summary judgment, listed some 28 separately numbered paragraphs of "Uncontroverted Contentions of Fact." Plaintiff, in response, controverted only five: paragraphs numbered 8, 11, 26, 27, and 28. Defendant's paragraph No. 8 states: "That Brooks fled the scene of the accident because he was driving without a license, and did not want to get a ticket." Plaintiff responded: "Controverted. Defendant Brooks' credibility is at issue as to any statements he made. (See Plaintiff's Statement of Controverted Contentions of Facts Par. 6 below.)" Plaintiff's paragraph No. 6, however, does not controvert the statements contained in defendant's paragraph No. 8. It reads: "Brooks ran the stop sign at the intersection of 107th Street and Lamar at approximately sixty miles per hour without attempting to brake. (Affidavit of Thomas Hansen, Par. 4)." The statements of Brooks, contained within his deposition, constitute the only evidence of his motivation for leaving the scene of the first collision and driving in excess of the speed limit on 107th Street. At the time his deposition was

taken, Brooks had already pled guilty to vehicular homicide, failure to stop and render assistance, and driving with a suspended license. We conclude that the mere statement that plaintiff questions Brooks' credibility does not constitute a valid and sufficient controversion of Ford's statement of fact No. 8. We require a party opposing the statement of an uncontroverted fact in a motion for summary judgment to come forth with a concise summary of conflicting testimony or evidence. Rule 141(b) (1989 Kan. Ct. R. Annot. 94). Clearly, plaintiff's response does not comport with that rule.

Defendant's paragraph No. 11 states that Ford followed Brooks at speeds over the legal limits in an attempt "to slow Brooks down and let him know that he was back there to get the license number." Plaintiff attempted to controvert that paragraph by adding that "Mr. Ford stated unequivocally that in an effort to catch up to Brooks, he reached 60 miles per hour. Ford further stated that even though Brooks had a head start, he was able to catch up to him." These statements do not change materially the basic statement of uncontested fact, which we have included in the factual statement in this opinion. Plaintiff also controverted defendant's paragraphs numbered 26, 27, and 28 on the grounds of relevancy and materiality. Those paragraphs describe the activities of a witness to the fatal collision who followed the car in which Brooks made his escape from that scene. The facts of that incident are not relevant to the issues before us. Also, the additional statements of fact included by plaintiff in response to defendant's motion for summary judgment do not add materially to the facts as stated earlier in this opinion. We conclude, as did the trial court, that the facts are undisputed and do not disclose that Ford's action or inaction caused or contributed to cause the fatal collision.

## DISCUSSION

Ford admits that he drove at speeds exceeding the posted limit in an effort to get Brooks' license number. Driving at unlawful speeds may, of course, be negligence; but the violation of a traffic law results in liability for the injury of another only where there is "a causal or proximate relationship to the injury." *Williams v. Esaw,* 214 Kan. 658, 660, 522 P.2d 950 (1974).

We find no case precisely on point with the facts of this case. The police chase cases, such as *Thornton v. Shore*, 233 Kan. 737, 666 P.2d 655 (1983); *Roll v. Timberman*, 94 N.J. Super. 530, 229 A. 2d 281, *cert. denied* 50 N.J. 84 (1967); and *Wrubel v. State of New York*, 11 Misc. 2d 878, 174 N.Y.S. 687 (1958), involve situations where police officers pursued lawbreakers at high speeds and the pursued vehicle struck a third vehicle, inflicting injuries. Special statutes pertaining to police vehicles are involved, and the police vehicles had not abandoned the chase at the time of the collisions. The majority of those cases hold that the officer is not liable to the third party because the sole proximate cause is the fleeing party's negligence rather than the officer's conduct in electing to pursue. Similarly inapplicable are the racing cases, where both drivers are engaged in a common enterprise which results in injury to a third person. See, *e.g.*, *Bellamy v. Edwards*, 181 Ga. App. 887, 354 S.E.2d 434 (1987).

The closest case to that at bar is *Johnson v. Johnson*, 171 So. 2d 710 (La. App. 1965). In *Johnson*, the defendant witnessed a drunken driver collide with another car and drive away. The defendant gave chase to get the license number. He overtook the driver, who agreed to return to the scene, but instead fled again. The defendant, who had failed to note the license number because of the agreement, continued the chase at high speeds but was two blocks away when the drunken driver crashed into a car in which the plaintiff was a passenger. The Louisiana court held that the trial court properly dismissed plaintiff's claim against the defendant because defendant owed plaintiff no legal duty not to pursue the driver under the circumstances. Furthermore, because the other driver was "oblivious" to the pursuit, the court found no causal connection between the pursuit and the pursued driver's actions. The court stated:

> "It is fundamental that a complained of act is not actionable unless it is a cause in fact of the harm for which recovery is sought, and the burden of proving this causal link is upon the plaintiff. Without causal connection between the act and the accident no legal liability exists." 171 So. 2d at 712.

Here, two undisputed facts are of importance. First, though Brooks knew that he was being followed or pursued, he had every reason to flee the scene of the first accident. He testified

he wanted to leave the general vicinity because he did not want to go to jail for driving without a license and that he was not worried about Ford following him. This testimony has independent support in the record. Brooks' driver's license had been suspended, and he was heading for what he perceived to be the asylum of his home state, Missouri, only two or three miles away. Second, Ford's pursuit had ended prior to the collision. Ford decelerated his vehicle, pulled to the side of the road, and stopped in order to write down Brooks' license number. Ford was no longer in pursuit of Brooks at the time of the collision. We conclude that the trial court was correct, and that Ford's actions did not cause or contribute to the collision as a matter of law.

The judgment of the Court of Appeals reversing the district court is reversed, and the judgment of the district court is affirmed.