NOT DESIGNATED FOR PUBLICATION

No. 115,988

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

BARCLAY GARRETT MEAD,
*Appellant*.


MEMORANDUM OPINION

Appeal from Jefferson District Court; GARY L. NAFZIGER, judge. Opinion filed August 11, 2017. Affirmed.

*Barclay Mead*, appellant pro se.

*Thomas E. Knutzen*, county attorney, for appellee.


Before ARNOLD-BURGER, C.J., STANDRIDGE and SCHROEDER, JJ.


*Per Curiam*: A jury convicted Barclay Garrett Mead of violating a protection from stalking order, a class A person misdemeanor. He appeals his conviction, citing multiple grounds, including: insufficient evidence, failure to allege a crime in the complaint, improper admission of a witness statement, error in denying pretrial motions to dismiss, lack of jurisdiction to issue a temporary protection from stalking order, and ineffective assistance of counsel. Finding no error, we affirm.

1

On July 21, 2015, Bailey and Aaron Kalka filed a petition with the Jefferson County District Court seeking an order of protection from stalking against Mead, who is Bailey's father. The petition, which sought protection for Bailey, Aaron, and their two children, described Mead threatening the Kalkas at their home and workplaces on various occasions. The court issued the order the same day. The order prohibited Mead from harassing or contacting the Kalkas, specifically prohibiting him from "contact[ing] the protected person, either directly or indirectly" and "request[ing] another to contact the protected person, either directly or indirectly." The district judge also added that Mead "shall not be within 200 yards of [the Kalkas'] home or places where they are employed unless on legitimate business at their place of employment." Deputies C.P. Uitts and Timothy Bacon personally served the order of protection on Mead that evening. The deputies went over the terms of the order with Mead when they served it.

Within minutes of being served with the order of protection, Mead called Melissa Hatfield, who was one of three individuals serving on the board of directors for Lakewood Hills Improvement District (Lakewood Hills), a residential lake community located in Jefferson County, Kansas. Mead was a resident of Lakewood Hills and was actively involved in the community's governance. Bailey was employed as an administrative clerk for the community's board of directors. In this phone conversation, Mead told Hatfield about the protective order and the its restrictions, expressing concern that the order would preclude him from being able to attend any community meetings at Lakewood Hills because Bailey, as administrative clerk, would also be in attendance in order to take notes. Given these circumstances, Mead asked Hatfield to terminate Bailey's employment. As additional justification for terminating Bailey's employment, Mead told Hatfield that Bailey had lied on her employment application and had violated the nondisclosure agreement she signed with Lakewood Hills. Mead also threatened to take legal action against Lakewood Hills if the community's board of directors did not

terminate Bailey's employment. Hatfield explained that she had only one vote as a director on the community board and employment decisions by Lakewood Hills could only be made by a majority of the board. With regard to demeanor, Hatfield described Mead's tone as "[s]ort of jovial but sort of threatening." Hatfield ultimately submitted a statement to the police about the contact from Mead.

Before the order of protection was served on Mead, Aaron worked as a cook and assistant manager of Hog Holler Saloon, which was owned by Mead and his wife, Kari. On the evening of June 21, 2015, after the order of protection was served on Mead, Kari called Aaron and fired him. Kari also told Aaron to "watch his back," which Aaron interpreted as being a threat from Mead. Bailey called the sheriff's department to report the phone call and the threat; law enforcement advised Aaron and Bailey to try to avoid further contact with the Meads. When Kari called back a second time that evening, the Kalkas followed the advice and did not answer the phone. Kari ended up leaving a voicemail.

The State ultimately charged Mead with two separate counts of violating the order of protection. The first count alleged Mead violated the order of protection as to Aaron based on the communication from Kari to Aaron. The second count alleged Mead violated the order of protection as to Bailey based on the communication from Mead to Hatfield. The case went to trial. The jury determined Mead was not guilty of violating the order of protection as applied to Aaron but determined Mead was guilty of violating the order of protection as applied to Bailey. Mead was sentenced to 12 months in jail, which was suspended to 12 months' probation. Mead moved for a judgment of acquittal, which the district court denied.

3

*Sufficiency of the evidence*

Mead first argues the evidence was insufficient to support his conviction of violating the order of protection from stalking, as to Bailey. When the sufficiency of the evidence is challenged in a criminal case, the appellate court must consider all of the evidence in a light most favorable to the prosecution and then determine whether a rational jury could have found the defendant guilty beyond a reasonable doubt. *State v. Parker*, 282 Kan. 584, 597, 147 P.3d 115 (2006). This court does not reweigh the evidence, resolve evidentiary conflicts, or make witness credibility determinations, which would usurp the role of the jury. *State v. Frye*, 294 Kan. 364, 375, 277 P.3d 1091 (2012).

The district court instructed the jury that to convict Mead of count 2, the State must prove Mead knowingly violated an order of protection from stalking as it applied to Bailey and that the violation occurred on or about July 21, 2015. See K.S.A. 2015 Supp. 21-5924(a)(6). The language of the order from protection stated that Mead was prohibited from, among other actions (1) "contact[ing] the protected person, either directly or indirectly" and (2) "direct[ing] or request[ing] another to contact the protected person, either directly or indirectly." The district judge also added that Mead "shall not be within 200 yards of [the protected persons'] home or places where they are employed unless on legitimate business at their place of employment."

Mead argues that there was no evidence that he indirectly contacted Bailey in violation of the order, as identified in the preceding paragraph as prohibited action (1). Specifically, he contends the State failed to provide any evidence that he requested Hatfield to forward any communications to Bailey or that Hatfield followed through with his request to terminate Bailey's employment. He cites two out-of-state intermediate appellate cases to support his contention that his actions did not amount to an "indirect

contact." However, both cases are distinguishable from the facts here. First, Mead cites *In re Gabrielle HH.*, 1 N.Y.3d 549, 804 N.E.2d 964, 772 N.Y.S.2d 643 (2003), for the legal proposition that contact with a government agency does not constitute indirect contact. But the legal proposition cited by Mead is not the holding of the case. In *Matter of Gabrielle HH.*, the father argued in a parental rights termination case that he failed to contact a state agency because he thought doing so would violate an order of protection prohibiting direct or indirect contact with his child; the court rejected the father's argument because he had provided contradictory testimony at an earlier hearing, admitting that he knew such contact did not violate the order. 1 N.Y.3d at 550-51. The *Matter of Gabrielle HH* case is not instructive here.

Mead also cites *Huber v. State*, 805 N.E.2d 887 (Ind. Ct. App. 2004), arguing this case stands for the legal proposition that indirect contact is not complete unless and until there is a request that the petitioner's message be conveyed to the protected person and evidence that the request was carried out. Huber was under three orders of protection, which prohibited him from "abusing, harassing, or disturbing the peace of [his wife, Julie,] either by direct or indirect contact." 805 N.E.2d at 892. Huber called Suzie Ginn, a county domestic violence advocate, and asked Ginn to call Julie and talk to Julie on his behalf; Ginn refused. The Indiana court held that "Ginn specifically told Huber that she could not convey the message; therefore, Huber's attempt to contact Julie indirectly through Ginn was incomplete." 805 N.E.2d at 892. Mead contends that, like in *Huber*, he did not indirectly contact Bailey because Hatfield did not follow through with his request to terminate Bailey's employment.

The language describing the prohibited conduct in the order of protection against Huber was confined to direct or indirect contact with his wife Julie that constituted abusing, harassing, or disturbing Julie's peace. But the conduct subject to the order of protection in this case is broader in scope because the protective order here also prohibited Mead from "direct[ing] or request[ing] another to contact the protected person,

5

either directly or indirectly." Hatfield's testimony at trial provides evidence that Mead called her and requested Hatfield to fire Bailey:

> "Q: What did that phone call consist of generally?
>
> "A: Generally, he wanted me to fire Bailey Kalka as the clerk of the board for Lakewood Hills. . . .
>
> . . . .
>
> "Q: At some point in time, did he come right out and say words to the effect of 'You need to fire her'?
>
> "A: Yeah.
>
> . . . .
>
> "A: He told me that she had lied whenever she applied, that she had violated a nondisclosure agreement that she had signed with the district, just insisting that I fire her and here are the reasons that I should fire her.
>
> "Q: Okay. So the general tone was not, 'Hey, there's been a protective order. Let's find a workaround'?
>
> "A: No.
>
> "Q: It was a different tone?
>
> "A: Yeah. It wasn't asked—the only solution that was requested was to fire her."

When Mead took the stand on his own behalf, the jury also heard his recollection of the phone conversation, in which he readily conceded that he told Hatfield to fire Bailey.

A reasonable juror could conclude from this testimony that Mead knowingly violated the order of protection by requesting or directing Hatfield to contact Bailey in order to terminate Bailey's employment with Lakewood Hills. Although Mead suggests Hatfield's testimony is unreliable because she could not recall the entire conversation, Mead essentially asks this court to reweigh the evidence and come to a different conclusion based on his interpretation of the phone conversation with Hatfield. Mead also contends the evidence does not support a finding that he made a direct or specific request to Hatfield to act on his request for her to terminate Bailey's employment; rather, he

6

asserts that he merely provided Hatfield his "opinion" that Hatfield should fire Bailey. Again, it is not the function of this court to reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations. *Frye*, 294 Kan. at 375.

Finally, Mead argues that requesting Hatfield to terminate Bailey's employment cannot be construed as the basis for violating an order of protection because Hatfield did not have the legal authority to make the decision to fire an employee without a majority vote from the board of directors. When questioned on this point at trial, Mead conceded he knew that Hatfield was just one of three directors who could vote on terminating Bailey's employment but that he told Hatfield "'somebody has to bring it to the other directors, and I'm asking you to do that.'" But Mead ignores the fact that the order of protection focused only on *his* behavior—it prohibited Mead from "requesting" or "directing" another person to contact a protected person. Mead requested that Hatfield fire Bailey, which necessarily would have required Hatfield to contact Bailey. For purposes of deciding whether there is sufficient evidence to establish that Mead violated the order of protection as to Bailey, it is irrelevant that Hatfield actually would have to first confer with the other directors in order to fire Bailey; Mead's act of requesting her to do so was the violation of the order.

The evidence, when viewed in the light most favorable to the prosecution, was sufficient for a rational factfinder to conclude that Mead knowingly violated the order of protection as to Bailey based on the communication from Mead to Hatfield.

*Motion to dismiss complaint*

Mead next contends the district court erred by not dismissing the complaint, which he claims failed to allege a crime against him. Challenges to charging documents are reviewed de novo. *State v. Dunn*, 304 Kan. 773, Syl. ¶ 6, 375 P.3d 332 (2016).

7

Mead argues that the complaint "lacks any specifics as to what specific actions were a violation" of the order of protection. Mead argues the complaint and supporting affidavit did not specify facts that describe the indirect contact he made in violation of the stalking order. But this level of specificity is not required for a charging document. "The complaint, information or indictment shall be a plain and concise written statement of the essential facts constituting the crime charged, which complaint, information or indictment, drawn in the language of the statute, shall be deemed sufficient." K.S.A. 22-3201(b); see *Dunn*, 304 Kan. at 811 ("Charging documents need only show that a case has been filed in the correct court, *e.g.*, the district court rather than municipal court; show that the court has territorial jurisdiction over the crime alleged; and allege facts that, if proved beyond a reasonable doubt, would constitute a Kansas crime committed by the defendant.").

Mead was charged under K.S.A. 2015 Supp. 21-5924(a)(6), which states that "[v]iolation of a protective order is knowingly violating . . . a protection from stalking order issued pursuant to K.S.A. 60-31a05 or 60-31a06, and amendments thereto." The complaint listed two identical counts, each providing:

> "That on or about the 21st day of July, 2015, in Jefferson County, Kansas, **BARCLAY G. MEAD**, then and there being present did unlawfully and knowingly violate a protection from stalking order issued pursuant to K.S.A. 60-31a05 or 60-31a06, and amendments thereto, in Jefferson County Case No. 2015-DM-115. In violation of **K.S.A. 2013 Supp. 21-5924(a)(6), Violation of a Stalking Order**, a Class A Person Misdemeanor."

The complaint tracked the elements of the statute, which is all that is required to give a defendant notice of the crimes alleged against him or her. K.S.A. 22-3201(b). The complaint alleged Mead knowingly violated a protection from stalking order, which was issued pursuant to the relevant statutes and identified by its case number. Mead also was put on notice of the date and county in which he was alleged to have acted unlawfully.

8

But again, Mead contends the affidavit did not sufficiently allege that he directly or indirectly contacted Bailey. The affidavit in support of the information stated:

"On July 21, 2015 at 1729 hours Melissa Hatfield, a Board Member of the Lakewood Hills Improvement District received a phone call from Barclay Mead. In this call Barclay Mead made allegations against Bailey Kalka of releasing confidential information to him. When this did not work he attempted to say his rights as a member of the improvement district had been taken away he would then sue the improvement district. Barclay Mead stated to Melissa Hatfield during this call that she could make 'the whole thing easier by just [f]iring Bailey.' Barclay Mead further stated that Bailey Kalka had lied on her application about being familiar with certain software programs. Melissa Hatfield in her statement said she felt like Barclay Mead was warning her to keep quiet or else."

The affidavit supplied more than sufficient evidence to notify Mead of the facts relied on by the State in alleging he committed the crime of violating an order of protection. Moreover, if Mead believed that the complaint failed to specify the particulars of the crime sufficiently to enable him to prepare a defense, he could have moved for a bill of particulars at that time. K.S.A. 22-3201(f).

Mead also argues that the counts switched at some point from count 1 as applied to Bailey and count 2 as applied to Aaron to count 1 as applied to Aaron and count 2 as applied to Bailey. He contends that the jury was not positive on which counts they were convicting, suggesting that he was prejudiced by this error. But Mead did not raise this argument to the district court and therefore cannot raise it now on appeal. See *State v. Kelly*, 298 Kan. 965, 971, 318 P.3d 987 (2014). And even if the argument were preserved for appeal, it is not persuasive. The only support Mead provides for the argument is a citation to a hearing on his motion to dismiss, during which defense counsel referred to count 1 as applicable to Bailey. There is no evidence that the jury was given conflicting information regarding the evidence pertaining to each of the counts at trial. The jury

9

instructions are consistent with the verdict forms on both counts. The district court did not err.

*Hearsay*

Mead argues the district court erred in allowing the State to introduce into evidence a written witness statement from Hatfield that she provided to law enforcement after Mead's phone call to her. Specifically, Mead alleges the written statement included hearsay statements from Bailey, who was not available at trial for cross-examination.

Mead admits he did not object when the written witness statement was introduced into evidence at trial. Mead contends that he is not precluded from asserting his claim for the first time on appeal, however, because he is asserting the deprivation of a constitutional right to confront witnesses against him pursuant to the Sixth Amendment to the United States Constitution. But constitutional grounds for reversal asserted for the first time on appeal are not properly before the appellate court for review. See *State v. Godfrey*, 301 Kan. 1041, 1043, 350 P.3d 1068 (2015).

Generally, a party may not appeal an evidentiary issue "where no contemporaneous objection was made and where the trial court did not have an opportunity to rule." *State v. Kirtdoll*, 281 Kan. 1138, 1148, 136 P.3d 417 (2006). The purpose of the contemporaneous objection rule is to avoid the use of tainted evidence and thereby avoid possible reversal and a new trial. *State v. King*, 288 Kan. 333, 342, 204 P.3d 585 (2009). "[T]he trial court must be provided the specific objection so it may consider as fully as possible whether the evidence should be admitted and therefore reduce the chances of reversible error." *State v. Richmond*, 289 Kan. 419, 429, 212 P.3d 165 (2009). Because there was no contemporaneous objection at trial, Mead has failed to preserve his evidentiary challenge to the State's introduction into evidence the written witness statement Hatfield provided to law enforcement after Mead's phone call to her.

10

*First Amendment*

Mead argues the district court erred in denying his motion to dismiss because the underlying order of protection he was convicted of violating prevented him from exercising protected political speech as guaranteed by the First Amendment to the United States Constitution. Specifically, Mead contends the order of protection prevented him from attending meetings at the Lakewood Hills office and from leading a Lakewood Hills committee of which he was a member because Bailey worked as a clerk for the community's board of directors. As applied in this case, Mead asserts the order of protection "criminaliz[ed]" his conversation with Hatfield in contravention of the First Amendment's protection of political speech.

> "Whether a statute is unconstitutionally vague or overbroad is a question of law over which this court has unlimited review. The constitutionality of a statute is presumed. All doubts must be resolved in favor of its validity, and before the act may be stricken down it must clearly appear that the statute violates the constitution. In determining constitutionality, it is the court's duty to uphold a statute under attack rather than defeat it. If there is any reasonable way to construe the statute as constitutionally valid, that should be done." *State v. Whitesell*, 270 Kan. 259, Syl. ¶ 1, 13 P.3d 887 (2000).

Mead makes only an as-applied challenge to the language of the order of protection and not to the face of any statute. With regard to the as-applied challenge, however, we find the plain language of the order of protection does not prohibit Mead from exercising the kind of speech about which he complains. The district judge who issued the order of protection included a specific prohibition stating that Mead "shall not be within 200 yards of [the protected persons'] home or places where they are employed unless on legitimate business at their place of employment." But, again, the order itself did not prohibit Mead from participating in improvement district business at Bailey's place of employment because it made an exception for "legitimate business." So, notwithstanding the terms of the order prohibiting Mead from being within 200 yards of

Bailey's employment, there existed an exception to this prohibition for instances when Mead was on legitimate business, which appears to encompass Mead's attendance at Lakewood Community meetings as a member of the Lakewood Hills community.

In this case, Mead was not convicted of contacting Bailey's place of employment for legitimate business purposes; he was convicted based on evidence that—within minutes of receiving the order of protection as to Bailey—Mead requested that Hatfield terminate Bailey's employment with the Lakewood Hills community. Mead's action falls squarely under the prohibition that he not directly or indirectly request or direct any person to directly or indirectly contact Bailey. As such, we find the plain language of the order of protection does not prohibit Mead from exercising the kind of speech about which he complains and therefore does not infringe on Mead's constitutional rights.

*Void for vagueness*

Mead argues the district court erred by denying his pretrial motion to dismiss, which alleged that the order of protection was void for vagueness. Mead contends that the order's prohibition of "indirect contact" with the persons protected by the order is an unconstitutionally vague directive that violates his due process rights. The State did not respond to this argument in its brief.

While Mead frames this argument as one attacking the constitutionality of a statute, he does not identify any statute that he claims to be challenging, nor does he explain how the language of any statute is vague either on its face or as applied. A point raised incidentally in a brief and not argued therein is deemed abandoned. *State v. Sprague*, 303 Kan. 418, 425, 362 P.3d 828 (2015). With that said, pro se pleadings are to be liberally construed to give effect to their content rather than adhering to any labels and forms used to articulate the pro se litigant's arguments. *State v. Gilbert*, 299 Kan. 797, 798, 326 P.3d 1060 (2014). In this claim, Mead appears to be attacking language in the

12

order of protection itself, which the jury convicted Mead of violating. Mead asserts that if the jury's conviction determined Mead's phone call to Hatfield was an "indirect contact" under the order of protection, then that phrase is so vague and broad that it violates his constitutional due process rights.

Mead cites various sources—from caselaw to dictionary definitions to online legal advice web page citations—to demonstrate that the phrase "indirect contact" as used in the order of protection here requires an initial communication to a third party and then, in turn, an actual follow-up communication from the third party to the victim. He contends because he did not explicitly direct Hatfield to communicate with Bailey and the fact that Hatfield never did, in fact, communicate with Bailey to terminate her employment, his phone call with Hatfield did not constitute an indirect contact in violation of the order.

However, as discussed above with regard to the sufficiency of the evidence, the particular protection order in this case was quite detailed: the language specifically prohibited Mead from directing or requesting any other person to directly or indirectly contact the protected persons. There was sufficient testimony presented at trial to establish that Mead requested or directed Hatfield to fire Bailey, an act that necessarily would require Hatfield to directly or indirectly communicate with Bailey. We find nothing vague or overbroad about the restrictions placed on Mead by the order of protection. Accordingly, the district court did not err by denying Mead's pretrial motion to dismiss, which alleged that the order of protection was void for vagueness.

*Jurisdiction*

In challenging his conviction for violating the protective order, Mead contends the district court lacked jurisdiction to issue the temporary order of protection from stalking against him in the first place because Bailey's petition for the ex parte order of protection failed to raise a prima facie case of stalking. Whether jurisdiction exists is a question of

13

law over which this court's scope of review is unlimited. *State v. Dull*, 302 Kan. 32, 61, 351 P.3d 641 (2015).

Mead did not raise this issue to the district court. Issues not raised below are not properly before this court on appeal. See *Kelly*, 298 Kan. at 971. There are several exceptions to the general rule that a new legal theory may not be asserted for the first time on appeal, including the following: (1) the newly asserted claim involves only a question of law arising on proved or admitted facts and is finally determinative of the case; (2) consideration of the claim is necessary to serve the ends of justice or to prevent the denial of fundamental rights; and (3) the judgment of the trial court may be upheld on appeal despite its reliance on the wrong ground or having assigned a wrong reason for its decision. *State v. Phillips*, 299 Kan. 479, 493, 325 P.3d 1095 (2014). Mead seeks an exception to the general rule because this issue involves only a question of law arising on proved or admitted facts and is finally determinative of his case. The State did not respond to this issue in its brief.

Even if we presume that one of the three exceptions applies and Mead could assert this new legal claim for the first time, the claim is not persuasive. The statute governing temporary ex parte orders of protection from stalking states:

> "Prior to the hearing on the petition and upon a finding of good cause shown, the court on motion of a party may enter such temporary relief orders in accordance with K.S.A. 60-31a06, and amendments thereto, or any combination thereof, as it deems necessary to protect the victim from being stalked. Temporary orders may be granted ex parte on presentation of a verified petition by the victim supporting a prima facie case of stalking." K.S.A. 2016 Supp. 60-31a05(b).

"Stalking" is defined as "an intentional harassment of another person that places the other person in reasonable fear for that person's safety." K.S.A. 2016 Supp. 60-31a02(a). Prima facie evidence is evidence which, if undisputed, would be sufficient to carry the case to a

14

jury and sustain a verdict in favor of the plaintiff on the issue it supports. See *Baker v. City of Garden City*, 240 Kan. 554, Syl. ¶ 3, 731 P.2d 278 (1987).

The petition for a temporary ex parte order of protection from stalking filed in this case describes several instances in which Mead took threatening action toward Bailey, such as threatening Bailey, her children, and Aaron after Bailey's shift at a bar, firing Bailey and blocking her path out of the bar, and discharging a firearm within 1 foot of Bailey's head in an implied threat in a residential area. Bailey averred in the petition that she was "afraid [Mead] will continue harassment/threats or com[e] to my home drunk/armed as in past." The petition references additional incidents which were documented in prior police reports that do not appear in the record on appeal. But in his brief, Mead makes reference to these police reports as well, describing the subject of these reports as his "threats to call [the Kansas Department for Children and Families], alleged threats to terminate employment, alleged threats to tell the Improvement Board of Directors that [Bailey] lied about resume and shared confidential information and an alleged threat to make public a marital infidelity of [Bailey]."

The petition states a prima facie case of stalking under K.S.A. 2016 Supp. 60-31a05(b); thus, the district court had jurisdiction to issue the temporary ex parte order of protection from stalking against Mead.

*Ineffective assistance of counsel*

Mead argues he received ineffective assistance from his retained counsel, noting trial counsel failed to: (1) subpoena State witnesses, including Bailey, to testify for the defense; (2) object on hearsay grounds when the State introduced Hatfield's written witness statement into evidence; (3) argue all available defenses, including that the complaint failed to allege a crime against Mead and the petition for temporary protection order failed to allege a prima facie case of stalking; and (4) present an argument in

15

opposition to the State's motion in limine regarding an order of protection issued in a related civil case.

Mead did not raise the issue of ineffective counsel below. "An allegation of ineffective assistance of counsel will not be considered for the first time on appeal." *State v. Van Cleave*, 239 Kan. 117, 119, 716 P.2d 580 (1986); see *State v. Dull*, 298 Kan. 832, 839, 317 P.3d 104 (2014) ("The merits of a claim of ineffective assistance of counsel ordinarily are not addressed for the first time on direct appeal."). Our courts have explained that the district court judge is in the best position to judge the merits of many ineffective assistance of counsel claims, and without a trial objection the district court is not afforded the opportunity to consider and rule upon the issue. See *Rowland v. State*, 289 Kan. 1076, 1084, 219 P.3d 1212 (2009); *Van Cleave*, 239 Kan. at 119. With that said, Kansas courts will make an exception and address ineffective assistance claims for the first time on appeal in "extremely rare" cases where no evidentiary record needs to be established because the merits of the claims regarding trial counsel are obvious based on the appellate court's review of the record. *Dull*, 298 Kan. at 839.

In *Van Cleave*, our Supreme Court established guidelines for an appellate court to determine whether it is appropriate to remand a case to the district court for an evidentiary hearing on a claim of ineffective assistance of counsel raised for the first time on appeal. 239 Kan. at 119-21. Under these guidelines, an appellant must do more than simply refer to the record of proceedings below to support an allegation that counsel's performance was deficient and that the case should have been handled differently. Prior to seeking review on appeal without having first raised the issue below, an appellant must examine the circumstances surrounding counsel's performance and conduct at least some investigation into the claimed ineffectiveness. "Except in the most unusual cases, to assert a claim of ineffective assistance of counsel without any independent inquiry and investigation apart from reading the record is questionable to say the least." 239 Kan. at

16

120-21. The decision to remand a case to the district court for a *Van Cleave* hearing is within the discretion of the appellate court. See *Rowland*, 289 Kan. at 1084-85.

Mead fails to make the requisite showing that this is one of those exceptional cases in which remand for a *Van Cleave* hearing is required. Mead did not present this court with the results of any investigation to determine whether grounds for his claims exist; nor did Mead demonstrate how any of the alleged errors by counsel prejudiced his case. As it relates to counsel's failure to subpoena the State's witnesses, Mead only alleges prejudice in a conclusory manner:  the State's witnesses "would have been very damaging towards the prosecution." And several deficiencies of counsel as alleged by Mead claim that trial counsel should have acted on issues he has raised on appeal, none of which we have determined requires reversal. Finally, and contrary to Mead's argument, we note that at least two of Mead's allegations of deficient performance are simply inaccurate: contrary to Mead's claim, trial counsel *did* move to dismiss the complaint for failure to allege a crime and *did* object to the State's motion in limine.

Mead has failed to meet the minimal requirements established in *Van Cleave* to justify remanding his claim of ineffective assistance of counsel to the district court.

*Count 1*

Finally, Mead makes several arguments on appeal pertaining to the charge in count 1 that Mead violated an order of protection from stalking as to Aaron. Specifically, Mead argues that the order of protection was invalid as applied to Aaron because Aaron never signed the petition for the order, the protection order violated his First Amendment rights because it prevented Mead from terminating his employees, and there was insufficient evidence that he contacted Aaron in violation of the order of protection. We decline to address any of the alleged trial errors alleged by Mead in connection with the

17

charge in count 1, however, because Mead was not convicted of violating the order of protection from stalking as to Aaron.

Affirmed.