Pennie A. CARL, Plaintiff–Appellant,

v.

The CITY OF OVERLAND PARK, KANSAS; Myron Scafe, Chief of Police; and Lee Williams, Officer, Defendants–Appellees.

No. 94–3167.

United States Court of Appeals, Tenth Circuit.

Sept. 14, 1995.

brought this diversity action against Officer Williams, Police Chief Myron Scafe, and the City of Overland Park, Kansas, seeking damages under state law for the wrongful death of her son. *See* K.S.A. §§ 60–1901, 75–6103(a). The district court granted summary judgment to Defendants on alternative grounds, holding that Carl had failed to show either: (1) that Defendants breached a duty to Nelson, or (2) that any breach was the proximate cause of Nelson's death. We exercise jurisdiction under 28 U.S.C. § 1291 and affirm on the second ground set forth by the district court.

## BACKGROUND

At approximately 2:00 a.m. on March 10, 1991, Officer Williams was on routine patrol in a residential area when he noticed a car occupied by two individuals. The driver was Carl's 16–year–old son Nelson, who had borrowed the car from a third party and was driving without a license. Officer Williams claims that the car caught his attention because it had a defective headlight and was weaving within its lane. On that basis, Officer Williams decided to make a traffic stop. After informing the OPPD of his intent, Officer Williams signalled for Nelson to stop his car. Nelson disregarded the signal and began to accelerate. Officer Williams activated his siren and overhead lights, informed the OPPD that he was initiating pursuit, and a high-speed chase ensued.

The 60 to 70 mile per hour pursuit continued in a residential area with posted speed limits of 25 to 30 miles per hour. The road was dry and well-lit, and Officer Williams kept the OPPD informed of his speed and location throughout the pursuit. Both cars sped through the first intersection on a green light. Nelson drove through the second intersection on a red light, which had turned green before Officer Williams drove through. Nelson slowed but failed to stop at the following stop sign, and Officer Williams did the same. After the cars drove through the next intersection, the pursuit entered the jurisdiction of the Prairie Village Police Department

Ronald K. Barker of Kansas City, MO (and Larry E. Benson of Kansas City, KS, with him on the briefs) for plaintiff-appellant.

Donald Patterson of Fisher, Patterson, Sayler & Smith, Topeka, KS, for defendants-appellees.

Before EBEL, Circuit Judge, BRIGHT,[*] and McWILLIAMS, Senior Circuit Judges.

EBEL, Circuit Judge.

Aaron Nelson ("Nelson") died when he drove his car into a tree during a high speed pursuit by Police Officer Lee Williams ("Officer Williams") of the Overland Park Police Department ("OPPD"). Nelson's mother, Plaintiff–Appellant Pennie A. Carl ("Carl"),

---

[*] The Honorable Myron H. Bright, Senior Circuit Judge, United States Court of Appeals for the Eighth Circuit, sitting by designation.

("PVPD"), an area where Officer Williams had never driven. The PVPD was informed of the pursuit and two PVPD patrol cars began following Nelson's course, without becoming actively involved in the chase. Just past the following intersection, approximately three minutes after the pursuit had begun, Nelson drove his car off the road and into a tree. Nelson's passenger was thrown from the car and died soon thereafter. Nelson was pronounced dead at the scene.

During these events, the OPPD had in place a comprehensive policy governing vehicle pursuits. On October 17, 1990, Police Chief Myron Scafe had agreed with other police chiefs in the county to adopt the uniform provisions of the "Johnson County Police Chiefs' Association Inter–Jurisdictional Pursuit Policy" as standard operating procedure. *See* Appellant's App. at 3–19. Pursuant to this agreement, the OPPD had incorporated the substance of the Inter–Jurisdictional Policy into its own existing policy, SOP 100–13. *See id.* at 20–34. The purpose of SOP 100–13 is to provide officers with "guidance and direction" in performing vehicle pursuits. *Id.* at 20. One section sets forth "factors" that must be considered before a pursuit is initiated; another section defines "conditions" that require termination of a pursuit; and the remainder describes the mechanics of how a pursuit should proceed. *Id.* at 20–33.

Believing that Officer Williams had violated numerous provisions in this policy, Carl brought this action against Officer Williams, Chief Scafe, and the City of Overland Park, Kansas, seeking damages under state law for the wrongful death of her son.[1] *See* K.S.A. §§ 60–1901 *et seq.* (Kansas Wrongful Death Statute); §§ 75–6101 *et seq.* (Kansas Tort Claims Act). The district court granted summary judgment to the Defendants, and it is from that final order that Carl now appeals.

---

1. Plaintiff's original complaint also alleged violations of 42 U.S.C. § 1983. In a separate unpublished order, the district court dismissed those claims as time-barred under the applicable statute of limitations. *See Carl v. City of Overland*

## ANALYSIS

We review the grant of summary judgment de novo, applying the same legal standard as the district court under Fed. R.Civ.P. 56(c). *Universal Money Ctrs., Inc. v. AT & T,* 22 F.3d 1527, 1529 (10th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 655, 130 L.Ed.2d 558 (1994). Summary judgment is appropriate if, viewing the record in the light most favorable to Carl, the nonmoving party, there is no genuine issue of material fact and Defendants are entitled to judgment as a matter of law. *See id.* at 1529.

Because this is a diversity action, we apply Kansas choice of law rules. *See Robert A. Wachsler, Inc. v. Florafax Int'l Inc.,* 778 F.2d 547, 549 (10th Cir.1985). Because the events at issue occurred within the Kansas border, Kansas choice of law rules dictate the use of Kansas substantive law. *See Ling v. Jan's Liquors,* 237 Kan. 629, 703 P.2d 731, 735 (1985).

Kansas law provides a wrongful death cause of action for damages. K.S.A. §§ 60–1901 *et seq.* When the wrongful death is caused by a government employee acting within the scope of employment, the Kansas Tort Claims Act extends liability to the employing governmental entity. *See* K.S.A. § 75–6103(a). To prove a wrongful death claim, Carl must demonstrate the standard elements of a tort cause of action: (1) that Defendants owed Nelson a legal duty; (2) that Defendants breached that duty; (3) damages; and (4) that the breach was the actual and proximate cause of Nelson's death. *See Hammig v. Ford,* 246 Kan. 70, 785 P.2d 977, 980 (Kan.1990). Defendants may affirmatively defend against this claim by demonstrating entitlement to immunity under an exception to the Kansas Tort Claims Act. *See Allen v. Board of Comm'rs of the County of Wyandotte,* 773 F.Supp. 1442, 1454 (D.Kan.1991).

Relying on these legal standards, Defendants moved for summary judgment on alternative grounds. First, they argued that Carl

*Park, Kan.,* No. 93–2202–JWL, 1994 WL 68712 (D.Kan. Feb. 4, 1994). Because that order has not been appealed, the § 1983 claims are not before us.

could not prevail on the merits of her claim because she had failed to show the essential elements of breach of duty or proximate cause as a matter of law. Second, Defendants argued that they could not be held liable in any event, because they were immune from suit under the discretionary function exception to the Kansas Tort Claims Act. K.S.A. § 75–6104(e).

The district court did not rule on Defendants' immunity defense, but focused instead on the elements of Carl's claim. The court first held that Carl had failed as a matter of law to show that initiating or continuing pursuit constituted a breach of any legal duty owed to Nelson. In so holding, the court relied in part on certain driving privileges bestowed on emergency vehicle operators under K.S.A. § 8–1506. Alternatively, the court held that any alleged breach of duty could not be considered the proximate cause of Nelson's collision, because Nelson's "voluntary decision to elude and evade a police officer and to travel at a speed greatly in excess of the posted limit" was the legal cause of Nelson's own death.

In this appeal, Carl argues that the district court failed to consider the impact of SOP 100–13. Carl contends that the standards contained in certain portions of SOP 100–13 imposed on Defendants a duty of care to Nelson once pursuit had been initiated, and that violations of the policy should therefore have been considered in the court's breach of duty analysis. Carl concludes that Nelson's conduct was arguably foreseeable when the alleged violations took place, and, therefore, a reasonable jury could have deemed Defendants' acts to be the legal cause of Nelson's death, rather than treating Nelson's conduct as an intervening cause. In response, Defendants challenge Carl's analysis and reassert their entitlement to immunity under the discretionary function exception, K.S.A. § 75–6104(e).

Because we may affirm on any ground supported by the record, see Medina v. City & County of Denver, 960 F.2d 1493, 1495 n. 1 (10th Cir.1992), we have given careful consideration to three possible bases upon which the district court's grant of summary judgment to Defendants properly might rest: (1)

no breach of a legal duty owed to Carl; (2) immunity under the discretionary function exception to the Kansas Tort Claims Act; or (3) no proximate cause. We address each of these grounds below, with the recognition that our job, while sitting in diversity, is solely to ascertain the result that would be reached in a Kansas state court. See Adams–Arapahoe School Dist. No. 28–J v. GAF Corp., 959 F.2d 868, 870 (10th Cir.1992). Ultimately, we conclude that summary judgment for Defendants may be upheld based on Carl's failure to show proximate cause as a matter of Kansas law.

### 1. Breach of Duty

The existence of a legal duty is a question of law determined by the court. Durflinger v. Artiles, 234 Kan. 484, 673 P.2d 86, 91 (1983). The question of breach, however, is a factual one that is typically left to a jury, except in rare cases where the evidence is susceptible to only one possible inference. Metal Trading Servs. of Colo., Inc. v. Trans–World Servs., Inc., 781 F.Supp. 1539, 1543 (D.Kan.1991).

It is well-settled under Kansas law that "[l]aw enforcement officers owe a duty to the public at large to use reasonable and ordinary care and diligence in exercising their duties." Allen, 773 F.Supp. at 1453; Robertson v. City of Topeka, 231 Kan. 358, 644 P.2d 458, 463 (1982). However, this general duty is owed to the population as a whole, not to particular individuals. Robertson, 644 P.2d at 463. Thus, "[a]bsent some special relationship with or specific duty owed an individual, liability will not lie for damages." Id. A special relationship or specific duty may be created in a number of different ways, most of which are clearly inapplicable to this case. See, e.g., id.; Dauffenbach v. City of Wichita, 233 Kan. 1028, 667 P.2d 380, 385 (1983); Hendrix v. Topeka, 231 Kan. 113, 643 P.2d 129, 137–38 (1982). Unlike the district court, however, we conclude that at least one type of specific duty was created through certain mandatory provisions in the OPPD's policy governing vehicle pursuits.

■ The Kansas Supreme Court has explained that when police officers are subject to mandatory guidelines, they "owe a special duty accordingly." *Fudge v. City of Kansas City*, 239 Kan. 369, 720 P.2d 1093, 1098 (1986); *see Mills v. City of Overland Park*, 251 Kan. 434, 837 P.2d 370, 377–80 (1992) (distinguishing permissive guideline using the word "may," which did not create a special duty, from mandatory guideline using the word "will," which did create a special duty). In *Fudge*, for example, police officers were subject to the following provision:

> An individual, male or female, who is incapacitated by alcohol or drugs, and because of such condition, is likely to do physical injury to himself or herself or others if allowed to remain at liberty *will* be taken into protective custody . . .

720 P.2d at 1098 (internal quote omitted) (emphasis added). The Kansas Supreme Court had to decide whether this provision created a special duty towards an individual whom the police witnessed in a clearly intoxicated state. Immediately after the police failed to take the individual into custody, he drove his car into a very serious collision. The court held that because the officers were governed by a specific mandatory guideline, and the factual predicates to trigger the guideline's application were present, the guideline did impose a special duty on the officers to take the individual into protective custody. *Id.* Failure to do so could, therefore, constitute a breach of duty, which in turn could form the basis of a viable negligence claim.

In this case, we similarly must review the OPPD vehicle pursuit policy that governed Officer Williams' conduct, in order to determine if any of its provisions are analogous to the provision in *Fudge*, thereby creating a specific duty to Nelson. Many of the guidelines in SOP 100–13 are clearly distinguishable because they place express reliance on an officer's judgment, consideration, "common sense," or "discretion." *See, e.g.,* Aplt's App. at 21 ("The decision to initiate a pursuit is within an officer's discretion. . . ."). However, we conclude that at least two of its provisions contain the same type of specific, mandatory language that created a special duty in *Fudge*. These provisions are contained in Part VI of SOP 100–13, which unequivocally mandates that "[a]ll pursuit activity *shall be terminated* " under an enumerated list of conditions. Aplt's App. at 27 (emphasis added). After reviewing the record, we find evidence from which a reasonable jury could find the existence of the factual predicates for at least two of the listed conditions, which would thereby trigger a duty to terminate pursuit.

Section VI(E) requires termination of a pursuit "[w]hen it is apparent that the pursuing officer is not familiar with the territory and is the only vehicle actively involved in the pursuit." Aplt's App. at 28. Officer Williams admitted that he had never before driven in the neighborhood where the pursuit took place after crossing into PVPD's jurisdiction, and that he was not otherwise familiar with the area. Although other officers testified that their interpretation of SOP 100–13's term, "familiar," did not require prior physical presence in a particular area, Officer Williams' familiarity was certainly in genuine dispute. Section VI(B) of SOP 100–13 also requires termination of a pursuit "[w]hen the dangers of continuing the pursuit outweighs [sic] the need for immediate apprehension of the suspect." Aplt's App. at 27. Because evidence existed from which a reasonable jury could have concluded that the dangers objectively outweighed the need for apprehension, this guideline also could have created a mandatory duty to discontinue pursuit of Nelson's car.[2]

2. Carl also argues that a special duty to Nelson was created under SOP 100–13 § VI(G), which requires termination of a pursuit when "[t]he pursuing officer knows, or is reasonably certain, that the fleeing vehicle is operated by a juvenile and the offense constitutes a misdemeanor or a non-serious felony and the safety factors involved are obviously greater than a juvenile can cope with." Aplt's App. at 28. Because there is no evidence in the record from which a jury reason-ably could find that Officer Williams "knew" or was "reasonably certain" that Nelson was a juvenile, this guideline cannot form the basis of a special duty as a matter of law. Carl makes similar arguments with regard to SOP 100–13 §§ VI(A), (C), & (D), which we also reject for lack of evidence to support the factual predicates necessary to bring those guidelines into play. Aplt's App. at 27–28.

Because the existence of these specific mandatory guidelines created a special duty to Nelson as a matter of Kansas law, and because Kansas courts leave the issue of breach to juries in all but extremely rare cases, *see Metal Trading Servs.*, 781 F.Supp. at 1543, the district court erred in finding no breach of duty as a matter of state law at the summary judgment stage. Rather than focusing on the nature of the governing guidelines, the district court rested its breach of duty analysis solely on K.S.A. § 8–1506. This statute provides certain "privileges" to emergency vehicle drivers. Specifically, it provides:

(a) The driver of an authorized emergency vehicle, ... when in the pursuit of an actual or suspected violator of the law, ... may exercise the privileges set forth in this section, but subject to the conditions herein stated.

(b) The driver of an authorized emergency vehicle may: ...

(2) Proceed past a red or stop signal or stop sign, but only after slowing down as may be necessary for safe operation;

(3) Exceed the maximum speed limits so long as such driver does not endanger life or property; ...

(d) The foregoing provisions shall not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons, nor shall such provisions protect the driver from the consequences of reckless disregard for the safety of others.

Although this statute can relieve officers of liability for certain traffic violations during an active pursuit, it is not dispositive of the entire breach of duty issue in this case—certainly not at the summary judgment stage. First, whether or not Officer Williams can assert these privileges requires preliminary findings of the existence of the "conditions herein stated"—e.g., that he slowed down as "necessary for safe operation," that he did not "endanger life or property," and that he drove his vehicle with "due regard" for safety. Because these are factual findings subject to genuine dispute, they cannot be decided on summary judgment. Moreover, even if Defendants can assert the

privileges in this statute, that does not relieve them of any independent duties created by the mandatory provisions in SOP 100–13.

Accordingly, we conclude that summary judgment for Defendants was not warranted on grounds that Carl failed to demonstrate breach of any legal duty to Nelson as a matter of Kansas law.

## 2. Discretionary Function Immunity

■ Defendants alternatively argue that they are entitled to summary judgment under the discretionary function exception to the Kansas Tort Claims Act. This exception grants governmental entities and their employees immunity from tort claims that are:

based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee, whether or not the discretion is abused and regardless of the level of discretion involved.

K.S.A. § 75–6104(e). To determine whether a duty is "discretionary," Kansas courts focus on the nature and the quality of the act. *Kansas State Bank & Trust Co. v. Specialized Transp. Servs., Inc.*, 249 Kan. 348, 819 P.2d 587, 599 (1991). "Discretion" requires more than "the mere exercise of some judgment," because judgment is exercised in nearly all endeavors; instead, a discretionary function "must involve some element of policy formulation." *Id.* 819 P.2d at 600.

■ The "discretion" question becomes an easy one in cases like this, where the legal duty at issue is itself created by the existence of specific, mandatory guidelines. For guidelines to create a legal duty under Kansas law, they must eliminate discretion, which, by definition, renders the discretionary function exception inapplicable. *Nero v. Kansas State Univ.*, 253 Kan. 567, 861 P.2d 768, 781 (1993) ("If there is a clearly defined mandatory duty or guideline, the discretionary function exception is not applicable."); *Kansas State Bank & Trust*, 819 P.2d at 600 ("It is clear that failure to follow mandatory guidelines is not subject to immunity under the discretionary function exception to the KTCA."); *see Fudge*, 720 P.2d at 1100 (holding that city was not immune from suit by a plaintiff

injured by an intoxicated person whom officers failed to place in custody because "the City adopted a specific mandatory set of guidelines for police officers to use with regard to handling intoxicated persons"); *Robertson*, 644 P.2d at 462 (holding that an officer's decision not to remove a trespasser from the plaintiff's property was discretionary, in part because "specific guidelines" were "[a]bsent"); *Jackson v. City of Kansas City*, 235 Kan. 278, 680 P.2d 877, 887–88 (1984) (holding that city was not immune from liability for damages caused by firetruck driving over the 35 m.p.h. maximum permitted by a fire department bulletin because "disregard of . . . departmental policies and regulations are not within the discretionary function or duty exception," and noting that "it would be difficult to visualize a situation where just the actual physical operation of a motor vehicle upon the highway would be a 'discretionary function or duty'"). Thus, given our conclusion with respect to the duty issue, we conclude that summary judgment for Defendants cannot be supported by the discretionary function exception to the Kansas Tort Claims Act.

### 3. Proximate Cause

 The final possible grounds for affirming summary judgment for Defendants is on the district court's finding that Carl failed to demonstrate proximate cause as a matter of Kansas law. This is a difficult question because the Kansas Supreme Court has not yet addressed the issue thoroughly or directly. In the absence of authoritative precedent from the Kansas Supreme Court, however, our job is to predict how that court would rule. *See Adams–Arapahoe Sch. Dist.*, 959 F.2d at 871; *Fields v. Farmers Ins. Co., Inc.*, 18 F.3d 831, 834 (10th Cir.1994). Kansas Supreme Court dicta, which represents that court's own comment on the development of Kansas law, is an appropriate source from which this prediction may be made. *See Menne v. Celotex Corp.*, 861 F.2d 1453, 1464 n. 15 (10th Cir.1988). It is our prediction from two Kansas Supreme Court cases, and from the cases cited with approval therein, that the Kansas Supreme Court would find no proximate cause in this case as a matter of law. *See Thornton v. Shore*, 233 Kan. 737,

666 P.2d 655 (1983); *Hammig v. Ford*, 246 Kan. 70, 785 P.2d 977 (1990). Thus, we affirm the district court's grant of summary judgment to Defendants on this ground.

Proximate cause is defined under Kansas law as "that cause which in natural and continuous sequence, unbroken by an efficient intervening cause, produces the injury and without which the injury would not have occurred, the injury being the natural and probable consequence of the wrongful act." *Baker v. City of Garden City*, 240 Kan. 554, 731 P.2d 278, 280 (1987). While Kansas courts normally treat proximate cause as a question of fact for the jury, courts may decide the issue as a question of law on summary judgment when the facts are "susceptible to only one inference" and the plaintiff "has failed to establish the necessary burden of proof." *Id.* 737 P.2d at 281; *St. Clair v. Denny*, 245 Kan. 414, 781 P.2d 1043, 1045–46 (1989). Carl argues that the proximate cause issue should have been submitted to the jury because a jury reasonably could have found that Nelson's death was the "natural and probable consequence" of Officer Williams' alleged violations of the OPPD pursuit policy. The district court rejected this view. Relying on *Thornton*, 666 P.2d 655, and *Hammig*, 785 P.2d 977, the district court concluded that Kansas courts would deem Carl's voluntary, high-speed flight as the legal cause of his own death. Based on our reading of these two cases, we agree.

In *Thornton*, the Kansas Supreme Court did not address police officer liability for injuries to a fleeing driver, but it did address the related issue of police officer liability for injuries to third parties with whom a fleeing driver has collided. The officer in *Thornton* was pursuing a fleeing traffic violator when the suspect's car collided with a third vehicle, killing that third vehicle's two passengers. 666 P.2d at 657. The decedents' relatives brought wrongful death claims against the pursuing officer. *Id.* 666 P.2d at 658. After an extensive analysis of the relevant policy considerations, the Kansas Supreme Court affirmed summary judgment in the officer's favor. *Id.* 666 P.2d at 668. Although the court rested its decision on the ground that the officer had not breached a legal duty

owed to the third parties, the court's reasoning and broad policy statements implicitly supported the view that the officer's pursuit could not be considered the proximate cause of the third parties' deaths. *Id.*

The holding in *Thornton* was based on the court's view that Kansas law should not force a police officer to be "the insurer of the fleeing law violator." *Id.* In adopting this position, the Kansas Supreme Court endorsed numerous vehicle pursuit cases from the majority of states that have similarly refused to hold officers liable "for the acts of the fleeing violators." *Id.* 666 P.2d at 662–67. In so doing, the court quoted with apparent favor language from those cases holding that a fleeing suspect's own conduct must be treated as the legal cause of injuries resulting from collisions with the fleeing suspect's vehicle. *Id.* 666 P.2d at 662–65.[3] While not explicitly resting its own holding on proximate cause grounds, the *Thornton* court incorporated this reasoning into its conclusion. "The officer in such circumstances," the court explained, "has breached no duty owed to persons injured by the fleeing violator's own negligence or wanton conduct and, accordingly, as a matter of law the officer has not committed a tort upon such injured persons." *Id.* 666 P.2d at 668.

The Kansas Supreme Court implicitly reinforced this view on proximate cause in the more recent case of *Hammig v. Ford*, 246 Kan. 70, 785 P.2d 977, 982 (1990). In *Hammig*, the court analyzed proximate cause in the context of a citizen vehicle pursuit. One citizen pursued another citizen who had fled an accident scene, in order to obtain the fleeing citizen's license number. *Id.* 785 P.2d at 979. The fleeing citizen collided with a third vehicle, killing one of its passengers. *Id.* The passenger's spouse brought a wrongful death suit against the citizen who had initiated the pursuit, arguing that he

should be held liable for damages inflicted by the citizen he had pursued. *Id.* In analyzing this issue, the Kansas Supreme Court first commented on the police pursuit cases, including *Thornton* and the cases cited therein. *Id.* 785 P.2d at 982. Although the court held these cases "inapplicable" to the citizen pursuit context, the court reiterated that the general rule in police pursuits is that "the officer is not liable to the third party because the sole proximate cause is the fleeing party's negligence rather than the officer's conduct in electing to pursue." *Id.*

In reading this acknowledgment as additional support for our prediction that Kansas courts would find no proximate cause as a matter of law in the case before us, we are not unmindful that *Hammig* is factually distinguishable from our case. In *Hammig*, the court ultimately found no proximate cause because of two unique facts: (1) the pursuit had ended several blocks prior to the accident; and (2) the fleeing citizen had admitted that his reasons for fleeing were entirely independent of the fact that he was being pursued. *Id.* However, because *Hammig* was a citizen pursuit case rather than a police pursuit case, the absence of those facts in the case before us is not dispositive of the proximate cause issue. In *Hammig*, the Kansas Supreme Court appeared to draw a dichotomy between public and private vehicle pursuits, by describing the former cases as "inapplicable" to the latter. *Id.* We presume that this distinction is based in significant part on the fact that it is unlawful to flee from a police officer, but not necessarily from another private citizen. Because intervening, unforeseeable criminal acts break the chain of causation, proximate cause can be lacking in police cases even where, as here, "the police vehicle[ ] had not abandoned the chase at the time of the collision[ ]." *Id.; see*

3. *E.g., Chambers v. Ideal Pure Milk Co.*, 245 S.W.2d 589, 591 (Ky.1952) ("To argue that the officers' pursuit caused [the fleeing suspect] to speed may be factually true, but it does not follow that the officers are liable at law for the results of [the suspect's] negligent speed. Police cannot be made insurers of the conduct of the culprits they chase."); *City of Miami v. Horne*, 198 So.2d 10, 13 (Fla.1967) ("Although pursuit may contribute to the reckless driving of the pursued," an officer driving with care "is not responsible for the acts of the offender."); *Roll v. Timberman*, 94 N.J.Super. 530, 229 A.2d 281, 284–85 (adopting the majority view that "the proximate cause of the accident is the reckless driving of the pursued, notwithstanding recognition of the fact that the police pursuit contributed to the pursued's reckless driving"), *cert. denied*, 50 N.J. 84, 232 A.2d 147 (1967).

*Sly v. Board of Educ. of Kan. City*, 213 Kan. 415, 516 P.2d 895, 902–03 (1973).

Although *Thornton* and *Hammig* addressed proximate cause in the context of injuries to third parties rather than to a fleeing driver, that distinction is unlikely to produce a different outcome in the Kansas courts. *Thornton*'s clear statement that an officer should not be made "the insurer of the fleeing law violator" applies with equal, if not greater, force when the resulting harm is to the fleeing suspect, rather than to an innocent third party. To allow a jury to hold that Officer Williams' decision to initiate or continue pursuit was the proximate cause of Nelson's death therefore would be inconsistent with our prediction of Kansas law.

This prediction, of course, is limited to the facts of this case. While this case falls squarely within the set of typical police pursuit cases contemplated in *Thornton, Hammig*, and the cases cited therein, we would not necessarily predict that Kansas courts would *never* find proximate cause as a matter of law in *all* cases involving police pursuits. It is possible, for example, that the Kansas Supreme Court would rule differently on the proximate cause issue if there was evidence that the police acted with recklessness or intent, such as an egregious case where an officer ignored clear danger by deliberately initiating pursuit through a parade, a school crossing zone, or a densely populated area during rush hour. *See* SOP 100–13, Aplt's App. at 20 (noting that officers are not protected "from the consequences of *reckless disregard* for the safety of others"); K.S.A. § 8–1506(d) (noting that the privileges bestowed on emergency vehicle drivers do not "protect the driver from the consequences of reckless disregard for the safety of others").[4] Reckless acts are qualitatively different from negligent or grossly negligent acts (which are merely an extreme variant of carelessness), because reckless acts require an element of

deliberateness—"a conscious acceptance of a known, serious risk." *Archuleta v. McShan*, 897 F.2d 495, 499 & n. 8 (10th Cir.1990). Thus, under such extreme circumstances, a Kansas court might come out differently on the question of proximate cause.

However, such a case is not before us and therefore we need not predict whether Kansas courts would find proximate cause under a more extreme factual scenario. The record in this case alleges at most that Defendants were negligent or grossly negligent. Thus, it is squarely controlled by the language in *Thornton, Hammig*, and the cases they cite with approval, which indicate that no proximate cause exists as a matter of law. This case involved a pursuit at 2:00 a.m. on dry, well-lit roads, that were nearly deserted. It was closely monitored and undertaken in accordance with a supervisor's instructions. The speeds ranged up to only 70 m.p.h., and the pursuit lasted a total of only about three minutes. Under these facts, we feel compelled by the Kansas Supreme Court's commentary in *Thornton* and *Hammig* to hold that Nelson's own conduct was the proximate cause of his death as a matter of Kansas law.

## CONCLUSION

Because Carl has failed to demonstrate that a reasonable jury could find proximate cause on the facts presented as a matter of Kansas law, none of the Defendants may be held liable for damages under the Kansas Tort Claims Act. Accordingly, we AFFIRM the grant of summary judgment to Defendants on Carl's wrongful death claim.

BRIGHT, Senior Circuit Judge, concurring separately.

I concur in the result but write separately.

Judge Ebel, writing for himself and Judge McWilliams, reads the Kansas case law to require an affirmance on grounds that the

---

**4.** We note that in federal claims under 42 U.S.C. § 1983, we have explicitly held that liability may attach in police pursuit cases when an officer acts recklessly by being "aware of a known or obvious risk that was so great that it was highly probable that serious harm would follow," and by "proceed[ing] in conscious and unreasonable disregard of the consequences." *Medina v. City*

*and County of Denver*, 960 F.2d 1493, 1496 (10th Cir.1992); *see Webber v. Mefford*, 43 F.3d 1340, 1343 (10th Cir.1994); *Trigalet v. Young*, 54 F.3d 645, 647 (10th Cir.1995). However, because Carl's § 1983 claim was dismissed as time-barred and not appealed herein, there is no § 1983 claim currently before us.

defendants' conduct did not proximately cause the accident here in question. While I do not quarrel with this interpretation, I add my separate views so as to indicate that the modern trend of police chase cases leaves the proximate cause issue to the jury.

In the majority of jurisdictions, proximate cause is considered to be a question of fact when the plaintiff alleges negligence on the part of police in commencing or continuing pursuit. *Haynes v. Hamilton County*, 883 S.W.2d 606, 612 (Tenn.1994) (providing numerous citations to other jurisdictions). In *Haynes*, the Tennessee Supreme Court reversed an earlier ruling in *Nevill v. City of Tullahoma*, 756 S.W.2d 226 (1988). The Court noted that New York and Florida had also reconsidered the issue and adopted the emerging majority view. *Haynes*, at 612.

While I recognize that high speed pursuit may be necessary for apprehending dangerous criminals, I cannot conclude that all chases are reasonable no matter what the circumstances. *See Haynes*, at 613 ("We are convinced that the majority rule is the better-reasoned and more persuasive rule, because it recognizes that public safety is the ultimate goal of law enforcement, and that when the risk of injury to members of the public is high, that risk should be weighed against the police interest in immediate arrest of a suspect."); *Travis v. City of Mesquite*, 830 S.W.2d 94, 98 (Tex.1992) ("Police officers must balance the risk to the public with their duty to enforce the law to choose an appropriate course of conduct. Public safety should not be thrown to the winds in the heat of the chase.")

The rule reiterated in the *Hammig* case has not been set in stone by the Kansas Supreme Court. *Hammig* was a citizen pursuit case rather than a police pursuit case and is factually distinguishable from our case. The commentary of the majority in *Thornton* also produced multiple dissents. Nevertheless, the reading of Kansas case law does not demand or require a reversal of the district court's judgment.