Gardner, J., dissenting:
 

 I respectfully dissent. I would affirm based on lack of causation and not reach the issues presented in the cross-appeal.
 

 Summary judgment based on lack of proximate cause is appropriate here
 

 The issue of proximate cause typically presents a question of fact for the jury.
 
 Hale v. Brown
 
 ,
 
 287 Kan. 320
 
 , 324,
 
 197 P.3d 438
 
 (2008) ;
 
 Zimmerman v. Brown
 
 ,
 
 49 Kan. App. 2d 143
 
 , 157-58,
 
 306 P.3d 306
 
 (2013). But a district court may decide causation against a plaintiff on summary judgment if the evidence permits no reasonable inference that could support proximate cause.
 
 Siruta v. Siruta
 
 ,
 
 301 Kan. 757
 
 , 767,
 
 348 P.3d 549
 
 (2015). See
 
 Drouhard-Nordhus v. Rosenquist
 
 ,
 
 301 Kan. 618
 
 , 618-19,
 
 345 P.3d 281
 
 (2015) (affirming grant of summary judgment based on lack of causation where evidence of a cause-and-effect relationship between the radiologist's alleged negligent diagnosis and the patient's death was speculative); cf.
 
 Hale
 
 ,
 
 287 Kan. at 324
 
 ,
 
 197 P.3d 438
 
 (affirming dismissal of case because a third driver did not proximately cause a collision between two other vehicles). If the moving party shows the absence of facts to support an essential element of the nonmoving party's claim, that nonmoving party " 'has the affirmative duty to come forward with facts to support its claim, although it is not required to prove its case.' "
 
 U.S.D. No. 232 v. CWD Investments
 
 ,
 
 288 Kan. 536
 
 , 556,
 
 205 P.3d 1245
 
 (2009) (quoting
 
 Hurlbut v. Conoco
 
 ,
 
 253 Kan. 515
 
 , 520,
 
 856 P.2d 1313
 
 [1993] ). That burden, which rests on the plaintiffs here, is not met. The district court properly granted summary judgment for defendants in a well-reasoned, 26-page decision that thoroughly explains why the facts fail to present evidence of proximate cause upon which reasonable minds could differ.
 

 Proximate cause is a cause that " 'in natural and continuous sequence, unbroken by an efficient intervening cause, produces the injury and without which the injury would not have occurred, the injury being the natural and probable consequence of the wrongful act.' [Citation omitted.]"
 
 Puckett v. Mt. Carmel Regional Med. Center
 
 ,
 
 290 Kan. 406
 
 , 420,
 
 228 P.3d 1048
 
 (2010).
 

 "There are two components of proximate cause: causation in fact and legal causation. To establish causation in fact, a plaintiff must prove a cause-and-effect relationship between a defendant's conduct and the plaintiff's loss by presenting sufficient evidence from which a jury can conclude that more likely than not, but
 for defendant's conduct, the plaintiff's injuries would not have occurred."
 
 Drouhard-Nordhus
 
 , 301 Kan. at 623,
 
 345 P.3d 281
 
 .
 

 The causation finding is not made in a vacuum-the issue here is whether plaintiffs have shown a genuine issue of material fact that the trooper's
 
 reckless
 
 acts caused the collision. Although Kansas cases have not specifically addressed the causation issue in the context of a police pursuit, the Tenth Circuit did so in
 
 Carl v. City of Overland Park, Kan.
 
 ,
 
 65 F.3d 866
 
 (10th Cir. 1995). There, the mother of a motorist killed by a
 fleeing suspect during a high-speed police pursuit brought a wrongful death action against the city and the police officer. The Tenth Circuit reviewed two Kansas Supreme Court opinions involving police chases-
 
 Thornton v. Shore
 
 ,
 
 233 Kan. 737
 
 ,
 
 666 P.2d 655
 
 (1983), and
 
 Hammig v. Ford
 
 ,
 
 246 Kan. 70
 
 ,
 
 785 P.2d 977
 
 (1990) -focusing on the Kansas court's language that an officer should not be made the insurer of a fleeing law violator. The Tenth Circuit predicted that Kansas courts would hold that the fleeing criminal's own conduct in fleeing the police and crashing his vehicle was the sole proximate cause of his injuries and that the decision of the pursuing officer to conduct that pursuit was not the proximate cause as a matter of law. See
 
 Carl
 
 ,
 
 65 F.3d at 874
 
 .
 

 In reaching that ruling, the Tenth Circuit distinguished between causation in typical police pursuit cases and causation where reckless acts are shown:
 

 "While this case falls squarely within the set of typical police pursuit cases contemplated in
 
 Thornton
 
 ,
 
 Hammig
 
 , and the cases cited therein, we would not necessarily predict that Kansas courts would
 
 never
 
 find proximate cause as a matter of law in
 
 all
 
 cases involving police pursuits. It is possible, for example, that the Kansas Supreme Court would rule differently on the proximate cause issue if there was evidence that the police acted with recklessness or intent, such as an egregious case where an officer ignored clear danger by deliberately initiating pursuit through a parade, a school crossing zone, or a densely populated area during rush hour. Reckless acts are qualitatively different from negligent or grossly negligent acts (which are merely an extreme variant of carelessness), because reckless acts require an element of deliberateness-'a conscious acceptance of a known, serious risk.' Thus, under such extreme circumstances, a Kansas court might come out differently on the question of proximate cause. [Citations omitted.]"
 
 Carl
 
 ,
 
 65 F.3d at 874
 
 .
 

 Plaintiffs do not present an "egregious case" in which the officer
 ignored a clear danger. Instead of occurring during a parade or some other "extreme circumstance," this pursuit took place at 9:30 p.m. on a Monday evening, in dry weather, on an artificially lit four-lane street, which the video shows carried very little traffic at the time. This is a "typical police pursuit case" which is doomed by lack of proximate cause. See
 
 State v. Anderson
 
 ,
 
 270 Kan. 68
 
 , 73,
 
 12 P.3d 883
 
 (2000) (discussing
 
 Thornton
 
 );
 
 Clark v. Thomas
 
 ,
 
 505 F.Supp.2d 884
 
 , 892-93 (D. Kan. 2007) (discussing
 
 Carl
 
 ).
 

 Plaintiffs' theory of causation is speculative
 

 Plaintiffs' theory of causation is that if the trooper had terminated his pursuit between 20th and 21st Street and no later than when Horton ran the red light at 21st Street (approximately 42 seconds before the collision), Horton would have slowed down by 29th Street and not crashed into the plaintiffs' vehicle. In other words, the trooper's reckless act of not terminating his pursuit at or near 21st Street caused plaintiffs' injuries. No other theory of causation was argued to the district court, and none other will be heard on appeal. The district court, after reviewing the evidence advanced by plaintiffs, found nothing cured "the ultimate speculation upon which plaintiffs' assertion of causation is left grounded."
 

 "Plaintiffs cannot, as a matter of proof-and based on the entirety of the evidence advanced-establish that Mr. Horton would see, hear, or be aware of, and if he did, would have responded positively, timely, responsibly to the termination of the pursuit, even had [the trooper] elected to do so at any point where the specter of a finding of reckless disregard in the act of continuing to pursue might reasonably arise."
 

 "As part of the pretrial evaluation, the trial court ... must determine whether the expert opinion is 'based on facts that enable the expert to express a reasonably accurate conclusion as opposed to conjecture or speculation.' "
 
 First Savings Bank, F.S.B. v. U.S. Bancorp
 
 ,
 
 117 F.Supp.2d 1078
 
 , 1083 (D. Kan. 2000) (quoting
 
 Kieffer v. Weston Land, Inc.
 
 ,
 
 90 F.3d 1496
 
 , 1499 [10th Cir. 1996] ). The district court properly made that determination here.
 

 Plaintiffs' evidence of causation is insufficient
 

 Plaintiffs rely on appeal on three pieces of evidence to show
 causation: the video recorded by the trooper's vehicle; expert testimony from Dr. Alpert, a criminologist; and deposition testimony of Kansas Highway Patrol Lieutenant Scott Martin. Review of this evidence shows no genuine issue of material fact regarding causation.
 

 Video of the pursuit
 

 The video shows, as noted above, that this was a typical police pursuit-it took place at 9:30 p.m. on a Monday evening, in dry weather, on an artificially lit four-lane street, which carried very little traffic at the time. No extraordinary circumstances are shown. See
 
 Carl
 
 ,
 
 65 F.3d at 874
 
 . The video shows how quickly the events transpired, how far behind Horton the trooper quickly became, and how Horton could not have seen the trooper for a significant period of time during the pursuit.
 

 Plaintiffs contend that it is reasonable to infer that when Horton's car can be seen on the trooper's video, Horton could also have seen the trooper's car. But that contention assumes that Horton was looking behind him the entire time that he was speeding away. That is an unreasonable inference, given the undisputed facts that Horton was actively fleeing from a law enforcement officer, accelerated and drove approximately 100 mph, sped through a red light, passed another southbound vehicle, and then managed to negotiate turns on a significantly curved street. Those events required Horton to give some attention to the road ahead.
 

 The video confirms the district court's findings that immediately after Horton ran the red light at 21st Street, the trooper was such a distance behind Horton that it is questionable whether Horton, who was driving recklessly, could have seen the trooper. The video shows that if the trooper had stopped at 21st Street, Horton, who was blocks ahead of the trooper, could not have known it because of the lay of the land and his distance from the trooper. Although some Kansas roads may be straight and flat, Kansas Avenue between 20th and 29th streets is not, as the district court emphasized in carefully detailing how the distance between Horton and the trooper, the hill at 25th Street and the curvature of the road south of 25th Street would have obscured Horton's view of the trooper.
 

 And nothing in the video suggests that Horton more likely than not would have slowed down by 29th Street even if Horton had known the trooper had stopped his pursuit at 21st Street.
 

 The expert report
 

 Dr. Alpert's expert report provides the only possible evidence of causation in this case. But his report lacks the necessary factual basis to make it reliable:
 

 "It is necessary that the facts upon which an expert relies for his or her opinion should afford a reasonably accurate basis for his or her conclusions as distinguished from mere guess or conjecture. Expert witnesses should confine their opinions to relevant matters which are certain or probable, not those which are merely possible."
 
 State v. Struzik
 
 ,
 
 269 Kan. 95
 
 , Syl. ¶¶ 2,
 
 5 P.3d 502
 
 (2000).
 

 Our governing law incorporates this reliability requirement in K.S.A. 2016 Supp. 60-456(b). Under this law, before any expert may testify, the district court must find the proffered testimony "is based on sufficient facts or data," and is "the product of reliable principles and methods," and that "the witness has reliably applied the principles and methods to the facts of the case." K.S.A. 2016 Supp. 60-456(b). Although the district court did not specifically mention this statute, by finding Dr. Alpert's report to be speculative and lacking any factual basis the district court found his proffered testimony deficient in the very respects required by this statute. We generally affirm judgments which are correct, even when they articulate different reasons than we do. See
 
 State v. Williams
 
 ,
 
 303 Kan. 585
 
 , 595,
 
 363 P.3d 1101
 
 (2016). We should do so here.
 

 The purpose of the reliability determination required by K.S.A. 60-456(b) is not to decide whether the expert's conclusions are correct but whether the analysis used to reach them is reliable.
 

 Smart v. BNSF Railway Co.
 
 ,
 
 52 Kan. App. 2d 486
 
 , 495-97,
 
 369 P.3d 966
 
 (2016). But here, one cannot tell what forms the basis for Dr. Alpert's conclusions. Plaintiffs do not suggest any basis except by conclusorily alleging: "Dr. Alpert's opinion is based on a plenary review of the facts of this case including the video, as well as the principles and methods of Dr. Alpert's expertise as a criminologist, which he reliably applied to the facts here." Dr. Alpert's affidavit
 and report are similarly vague and fail to specify any principle or method on which he relied.
 

 Reliability of an expert's testimony may be demonstrated in various ways, chief among which are scientific theory and experience.
 
 Smart
 
 ,
 
 52 Kan. App. 2d at 495-97
 
 ,
 
 369 P.3d 966
 
 . When expert testimony is based on scientific theory, the court determines the reliability of proposed scientific testimony by looking to factors established in
 
 Daubert v. MerrellDow Pharmaceuticals, Inc
 
 .,
 
 509 U.S. 579
 
 , 585, 587,
 
 113 S.Ct. 2786
 
 ,
 
 125 L.Ed. 2d 469
 
 (1993). Those factors are: (1) whether the theory has been tested; (2) whether the theory has been subject to peer review and publication; (3) the known or potential rate of error associated with the theory; and (4) whether the theory has attained widespread or general acceptance.
 
 509 U.S. at 592-94
 
 ,
 
 113 S.Ct. 2786
 
 . Dr. Alpert's report includes none of those factors, nor similar indicia of reliability. Thus, if Dr. Alpert's testimony is based on scientific theory, it is unreliable.
 

 If Dr. Alpert bases his opinions on experience instead of on scientific theory, he must meet other requirements. He must " 'explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.' "
 
 Smart
 
 ,
 
 52 Kan. App. 2d at 495
 
 ,
 
 369 P.3d 966
 
 . But Dr. Alpert's report does not attempt to do any of these things. "An expert cannot substitute generic experience for relevant data."
 
 Smart
 
 ,
 
 52 Kan. App. 2d at 500
 
 ,
 
 369 P.3d 966
 
 . Nothing in the record provides the necessary connection between Dr. Alpert's experience and his conclusions or shows that his testimony otherwise meets the reliability requirements of K.S.A. 2016 Supp. 60-456(b). Thus, if Dr. Alpert's testimony is based on experience, it is unreliable.
 

 A review of Dr. Alpert's report also confirms its unreliability in at least two respects: his stated premise does not support his conclusion, and his report is based on assumptions rather than on facts. First, Dr. Alpert opines that the trooper should have terminated his pursuit "between 20th and 21st Street and no later than when [Horton] ran the red light at 21st Street"; had the trooper done so "it is more likely than not that [Horton] would not have crashed into the pick-up driven by Mr. Bennett at 29th." This latter conclusion rests solely on the premise that "it is more likely than not that
 drivers of fleeing vehicles will continue to flee as long as they are being chased." But that premise does not compel the conclusion Dr. Alpert attributes to it-that premise could just as easily support a conclusion that the trooper should not have stopped his pursuit at all but should have pursued Horton more aggressively, causing Horton to drive faster and thus avoid the collision.
 

 The inverse of the stated premise is the necessary one here, since plaintiffs' theory of causation is that had the trooper stopped his pursuit by 21st Street, Horton would have slowed down and not crashed into plaintiffs' vehicle. To support that conclusion, Dr. Alpert needed to show it is more likely than not that fleeing drivers in Horton's circumstances
 
 will slow down
 
 once they realize they are no longer being pursued. But that expert opinion was not offered. The premise that fleeing drivers will continue to flee as long as they are being pursued does not logically entail that proposition.
 

 Secondly, Dr. Alpert's report offers no factual basis for its conclusion that "[h]ad the police terminated their active attempt to apprehend Mr. Horton, it is more likely than not that he would not have crashed into the pick-up driven by Mr. Bennett at 29th." Instead, this conclusion rests on two assumptions: that Horton would have immediately known if the trooper had stopped his pursuit by 21st Street, and that because of such knowledge Horton would have slowed down by 29th Street.
 

 Dr. Alpert's conclusion incorrectly assumes that Horton had an unobstructed view of the trooper during the entire pursuit, opining
 that the trooper "inappropriately turned on his spotlight and directed it at the fleeing vehicle,
 
 distracting the driver and impeding the driver's ability to see in his mirrors
 
 ." (Emphasis added.) Sagely, plaintiffs do not rely on that theory, yet they rely on a theory which assumes the very facts that the district court properly found lacking-that Horton could have seen or heard what the trooper did at all times before the collision, as if the trooper had been immediately behind and fully visible to him the entire time.
 

 To the erroneous assumption that Horton would have somehow known that the trooper had stopped his pursuit, the report adds another unsupported assumption-that Horton would have slowed down by 29th Street. This is nothing more than inference stacking
 which is insufficient to prove a requisite fact. See
 
 State v. Banks
 
 ,
 
 306 Kan. 854
 
 , 859-60,
 
 397 P.3d 1195
 
 (2017). Dr. Alpert's report lacks the type of factual basis normally found in expert reports. It does not, for example, state why, or in what time frame, or in what distance, or under what circumstances fleeing criminals generally slow down after they realize a police pursuit has ended. Nothing in Dr. Alpert's report shows why he thinks Horton would likely have slowed down by 29th Street if he had somehow known that the trooper discontinued his pursuit at 21st Street. Nor does Dr. Alpert attempt to apply his theory to the facts of this case-he fails to explain why a reasonable person in Horton's position, having a suspended license, driving a car with a tag not assigned to it, fleeing from a law enforcement officer, and whose passenger was a runaway minor, would likely have slowed down at any point after the pursuit began. In such cases, causation is merely speculative, as the district court found. See
 
 Drouhard-Nordhus
 
 , 301 Kan. at 624-25,
 
 345 P.3d 281
 
 (finding generalized references to be speculative and inadequate to meet plaintiff's causation burden).
 

 Kansas Highway Patrol Lieutenant's testimony
 

 Plaintiffs allege on appeal that Kansas Highway Patrol Lieutenant Scott Martin's testimony helps establish causation. Martin agreed that "[o]ne of the reasons for terminating a pursuit is the hope that the vehicle being pursued will then slow down and not create a hazard to vehicular and pedestrian traffic."
 

 The district court cannot be faulted for not mentioning this evidence because plaintiffs did not argue it before the district court. Although plaintiffs' brief included part of Martin's deposition in its statement of undisputed facts, their brief did not make any argument referring to or based on this testimony. It is not the district court's duty to make arguments for the parties. "Judges are not like pigs, hunting for truffles buried in briefs."
 
 United States v. Dunkel
 
 ,
 
 927 F.2d 955
 
 , 956 (7th Cir. 1991).
 

 But including this testimony in the causation analysis makes no difference. Martin's testimony relates only to generalities, was not given in reference to any facts of this case, and conveys solely Martin's "hope." In other words, it expresses mere wishful thinking
 which adds nothing to the causation analysis. As plaintiffs' expert report acknowledges, Martin "approved the pursuit as appropriate and within policy."
 

 Good old common sense
 

 Plaintiffs also appeal to common sense and experience in claiming that Horton would have slowed down had he known that the trooper discontinued his pursuit. But common sense and experience would also suggest that Horton would
 
 not
 
 have slowed down regardless of what the trooper did because Horton also knew he was driving on a suspended license, in a stolen car (or a car with a stolen tag), with a minor runaway, and had just committed the additional crime of fleeing and eluding. Horton had every incentive to put as much space as possible between him and the law and had no incentive to slow down.
 

 Missouri cases demonstrate the lack of causation in typical police pursuit cases
 

 Several cases from Missouri, which use the same legal framework of proximate cause as we do in Kansas, demonstrate the propriety of granting summary judgment based on lack of causation in typical police pursuit cases such as this one. See, e.g.,
 
 Stanley v. City of Independence
 
 ,
 
 995 S.W.2d 485
 
 , 488 (Mo. 1999). In
 
 Stanley
 
 , the court affirmed summary judgment for the City, finding "there is no way to tell whether the collision would have been avoided if the officer had abandoned the pursuit after initiating it."
 
 995 S.W.2d at 488
 
 . The court explained why the officer's 45-second pursuit at speeds reaching 70 mph was not the proximate cause of the suspect's collision with another car:
 

 "Here, officer Hill's conduct was not a proximate cause of the collision. The suspects in the van made the initial decision to flee, sped through red lights and in the wrong lane of traffic, and collided with the decedents. Any negligence by officer Hill is connected to the plaintiffs' injury solely through the conduct of the fleeing van. Thus, the only conceivable causal link between the officer's alleged negligence and the collision is the conjectural effect of his pursuit on the pursued vehicle. Shortly after initiating the pursuit, the officer observed, 'this guy is going nuts on us.' There is nothing other than speculation to reach a conclusion that the officer's conduct was a 'cause' of the collision. Put another way, there is no way to
 tell whether the collision would have been avoided if the officer had abandoned the pursuit after initiating it. Thus, there is no factual basis to support a finding of proximate cause."
 
 Stanley
 
 ,
 
 995 S.W.2d at 488
 
 .
 

 The same is true in this case-only the conjectural effect of the trooper's pursuit links the officer's acts to the collision.
 

 Similarly, in
 
 Dilley v. Valentine
 
 ,
 
 401 S.W.3d 544
 
 , 549 (Mo. Ct. App. 2013), the court affirmed summary judgment concluding that an officer's pursuit of a fleeing suspect for less than two minutes at speeds reaching 50-55 mph was not the proximate cause of the suspect's collision with a minivan. In words similar to those used by the district court in our case, the Missouri Court of Appeals found the conclusion that "the collision would have been avoided had [the officer] abandoned the pursuit is based only on speculation."
 
 401 S.W.3d at 549
 
 .
 

 More recently, the Missouri Court of Appeals affirmed summary judgment in favor of the State where plaintiffs showed no causal link between the trooper's alleged negligence and a postpursuit collision in
 
 Throneberry v. Missouri State Highway Patrol
 
 ,
 
 526 S.W.3d 198
 
 , 201 (Mo. Ct. App. 2017),
 
 motion for transfer denied
 
 October 5, 2017. It found the officer's pursuit of the suspect was not the proximate cause of an accident in which the fleeing suspect killed a third party under the following facts: the pursuit reached 91 mph, the pursuit lasted two minutes or less, there was no physical contact between the officer's patrol car and the suspect's vehicle, and the officer's emergency lights and siren were activated. It found the " 'only conceivable causal link between [the trooper's] alleged negligence and the collision is the conjectural effect of [the trooper's] pursuit on the pursued vehicle.' [ Citation omitted.]"
 
 526 S.W.3d at 209
 
 .
 

 The court rejected the same theory of proximate cause that plaintiffs assert in this case, finding the assumption that "at some point after a pursuit is abandoned, a fleeing suspect will stop driving recklessly ... is itself 'rank conjecture and speculation.' "
 
 Throneberry
 
 ,
 
 526 S.W.3d at 211
 
 . It found that regardless of factual variances based on the speed, distance, or duration of the pursuit, nothing other than speculation supports a conclusion that the officer's conduct was a "cause" of the collision.
 
 526 S.W.3d at 211
 
 .
 

 See also
 
 Frazier v. City of Kansas
 
 ,
 
 467 S.W.3d 327
 
 , 337-38 (Mo. Ct. App. 2015) (finding no error in granting partial summary judgment on negligence claims where the expert's opinion was based on conjecture and speculation because he merely assumed the driver saw the officer when he commenced the pursuit and that the driver's reckless driving was a result of the pursuit, but did not know for certain whether the driver was even aware that he was being pursued at various points).
 

 These cases support the rationale used by the district court here-there is no way to tell whether the collision would have been avoided if the trooper had abandoned the pursuit.
 

 Conclusion
 

 The Kansas Supreme Court in
 
 Yount v. Deibert
 
 ,
 
 282 Kan. 619
 
 , 628,
 
 147 P.3d 1065
 
 (2006), answered the question presented by this case-how much evidence of causation must a plaintiff present to allege an actionable basis for negligence (here recklessness) and defeat a summary judgment motion? It held that when the probabilities are at best evenly balanced, it becomes the duty of the court to rule as a matter of law for the defendant:
 

 " 'The plaintiff must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result. A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant. Where the conclusion is not one within common knowledge, expert testimony may provide a sufficient basis for it, but in the absence of such testimony it may not be drawn.' "
 
 Yount
 
 ,
 
 282 Kan. at 628
 
 ,
 
 147 P.3d 1065
 
 (quoting Prosser & Keeton on Torts § 41, p. 269-70 [5th ed. 1984] ).
 

 A mere possibility of causation based on speculation is all we have here. Because plaintiffs failed to introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result, I would affirm.