**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 26 1997**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

CHARLES A. ROWE, Personal
Representative of the Estate of Alysia
Dawn Rowe, deceased,

      Plaintiff - Appellant,

  v.

CITY OF MARLOW, OKLAHOMA, a
municipal corporation; CITY OF
WAURIKA, a municipal corporation;
CITY OF COMANCHE; LAYLE
BAKER; KELVIN HALL; DALE
SEARIGHT; SANTOS CASTILLO,

      Defendants - Appellees.

No. 96-6144

(D.C. No. CIV-95-425-A)

(W.D. Oklahoma)

-------------------------------------------------

CHARLES A. ROWE, Personal
Representative of the Estate of Alysia
Dawn Rowe, deceased,

      Plaintiff - Appellant,

  v.

CITY OF MARLOW, OKLAHOMA, a
municipal corporation; JACK
BRACKETT, individually and in his
official capacity as Chief of Police for the
City of Marlow, Oklahoma; LEROY
WALKER, Marlow Police Lieutenant,
individually and in his official capacity,

      Defendants - Appellees.

No. 96-6229

(D.C. No. 96-CV-39)

(W.D. Oklahoma)

## ORDER AND JUDGMENT[*]

Before **ANDERSON**, **BALDOCK**, and **EBEL**, Circuit Judges.


In these companioned 42 U.S.C. § 1983 appeals, plaintiff Charles A. Rowe appeals from the grant of summary judgment in favor of defendants and appellees, the cities of Marlow, Duncan, Ryan, Waurika, and Comanche, Oklahoma, Marlow Chief of Police Jack Brackett, in his individual and official capacity, Marlow police Lieutenant Leroy Walker, in his individual and official capacities, and police officers Layle Baker, Kelvin Hall, Dale Searight and Santos Castillo.[1]  Mr. Rowe, as personal representative of the estate of his thirteen-year-old daughter, Alysia Dawn Rowe, sought damages for alleged constitutional violations suffered by Alysia in the course of a high-speed police chase of his family van, driven by Alysia, which ended when Alysia crashed at a dangerous

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of Tenth Cir. R. 36.3.

[1]Appeal No. 96-6144 involves the five municipal defendants, as well as Layle Baker, Kelvin Hall, Dale Searight, and Santos Castillo.  Appeal No. 96-6229 involves the City of Marlow, Police Chief Jack Brackett, and Lieutenant Leroy Walker.  Mr. Rowe subsequently settled his claims against the cities of Duncan and Comanche, and orders of dismissal were entered.  Any claim against Officer Searight, as an officer for the city of Comanche, was apparently also dismissed, although the briefs do not make clear exactly how.  See Appellant's App. (No. 96-6144) Vol. 2 at 493.  In any event, Mr. Rowe makes no argument concerning Officer Searight's liability in these appeals.

intersection and died. He also sought relief on a supplemental state law negligence claim. We affirm.[2]

## BACKGROUND

The undisputed material facts are as follows: At approximately 10:15 p.m. on July 3, 1994, Alysia Rowe took her family's van without permission and drove away from the Rowe residence in McCloud, Oklahoma. Her mother reported this fact to the Pottawatomie County Sheriff's Department at 10:28. Alysia called her grandmother at 1:33 a.m. on July 4, and received directions to her aunt's house in Marlow. At approximately 1:44 a.m., Marlow police officer Baker saw the van traveling south on U.S. 81 at approximately 84 miles per hour in a 40 miles per hour zone. Officer Baker began to pursue the van with his siren and emergency lights on. After briefly slowing down, the van sped up again. Officer Hall joined the pursuit as a back-up to Officer Baker.

The pursuit continued into Duncan, Oklahoma, with Officer Baker traveling between 95 and 100 miles per hour behind the Rowe van.[3] Officers Baker and Hall

---

[2]On our own motion, we previously abated this case, pending an en banc decision in Williams v. City and County of Denver, 99 F.3d 1009 (10th Cir. 1996), vacated and reh'g en banc granted, No. 94-1190 (10th Cir. March 3, 1997). For the reasons stated in this opinion, we hereby reinstate this case on our own motion.

[3]A videotape of the pursuit, which is a part of the record, reveals that Officer Baker maintained what appeared to be a three-to-five car length distance behind the van
(continued...)

learned at 1:55 a.m. that the van belonged to Charles Rowe of McCloud, Oklahoma, and that it had not been reported stolen. At approximately 2:00 a.m., Officer Baker learned that "possibly" a thirteen-year-old was in the van. Appellant's App. (No. 96-6144) Vol. 1 at 199. He testified, however, that "it appeared that there was an adult driving." Id. at 194. He also testified that he "felt [he] had a kidnaping in progress," based upon the information he had received. Id. Vol. 2 at 385.

Duncan police Lieutenant Phil Savage observed the van pass his location, and he activated his overhead lights. The pursuit continued southbound on U.S. 81 towards the city of Comanche. Comanche police officers Rondell Serratte and Jeff Arnold positioned their vans on the east side of the northbound lane of U.S. 81. Officer Serratte had activated his overhead lights. The Rowe van continued at high speed past those officers, southbound on U.S. 81, towards the city of Waurika. Officer Serratte terminated his involvement in the pursuit at the south edge of Ryan. Officer Arnold lost visual contact with the pursuit, and finally turned around at the Texas/Oklahoma line.

Waurika police officer Theron Brown, who had been notified of the pursuit, positioned his police car, with siren and lights activated, on U.S. 81, half on the shoulder and half in the southbound lane, just north of the city of Waurika. The van and the

---

[3](...continued)
throughout much of the pursuit. His police car at times dropped further back from the van.

pursuing police cars passed by Officer Brown's vehicle. Officer Brown dropped out of the pursuit at the Texas/Oklahoma state line.

Ryan police officer Santos Castillo, who had learned of the pursuit on his police radio, activated his lights and siren, and began to drive southbound on U.S. 81 at approximately 50 miles per hour, towards the city of Ryan. As the Rowe van approached his police car from behind, and did not appear to slow down, Officer Castillo moved over to the shoulder, and the Rowe van passed by, followed by two police cars.

The Rowe van then crossed the state line into Texas. After learning of the pursuit, Montague County Deputy Scott Hardison began traveling south on U.S. 81, just north of the city of Stoneburg, Texas, with his lights and siren activated. As the Rowe van approached him at a high rate of speed, he took evasive action to avoid being struck from behind. He testified that he was traveling between 80 and 90 miles per hour. Montague County Sergeant Rod Smith similarly took evasive action to avoid colliding with the van as it passed him traveling south on U.S. 81 towards Bowie, Texas. Sergeant Smith testified that he was "absolutely sure" that the Rowe van attempted to ram his police car. Id. Vol. 1 at 268.

As the Rowe van approached Bowie, Bowie police officers Katrina Jones and Chris Wolfe positioned their police cars to block off the road into which U.S. 81 ended in a "T" intersection. They did this to prevent any cars from entering the intersection from the west or east. A warning sign, two large stop signs, and two sets of alternating red

lights alerted drivers traveling south on U.S. 81 that the road ended in a "T" intersection. Officer Baker testified that he and Officer Hall had been warned of the approaching intersection and began to slow down "approximately a mile away" from the intersection. Id. at 201-02. Officer Hall testified that he slowed down as the Rowe van approached the "T" intersection "[s]o the person driving the van wouldn't feel like they were being pushed into something." Id. Vol. 2 at 424. Officer Baker's statement indicates that, as the Rowe van approached the intersection, he "backed off hard to allow a safety zone of eight (8) to ten (10) blocks giving the suspect vehicle options of stopping or slowing down." Id. at 433. The district court found that the "uncontroverted Rule 56(c) evidence . . . [shows that] the officers stopped their pursuit approximately 10 blocks before the T-intersection, to allow Alysia to stop." Id. at 487 (Order).[4]

The Rowe van entered the "T" intersection at approximately 87 miles per hour, and crashed into a car dealership on the south side of the intersection. Alysia was ejected from the van and killed. The pursuing officers said they did not see any brake lights activated, nor did the accident report prepared by a Texas Highway Patrol trooper indicate that skid marks were present. Officers Castillo, Hardison and Smith testified that they and the other officers at the crash site looked for another victim, as they assumed that Alysia was not alone in the car. Id. Vol. 1 at 247, 262.

---

[4]The videotape ends before the pursuit ends, but it does show that the pursuing police vehicles had dropped back somewhat towards the end of the chase.

Alysia's father brought one of these § 1983 actions (No. 96-6144 on appeal) against certain of the defendants, alleging that Officers Baker, Hall and Castillo seized Alysia, in violation of the Fourth Amendment, or, if no seizure occurred, they violated her Fourteenth Amendment substantive due process rights by "depriving her of her life with deliberate, reckless intent." Appellant's Br. (No. 96-6144) at 14. He also sought damages from the municipalities of Marlow and Ryan for failure to train, failure to supervise and failure to promulgate adequate high-speed police pursuit policies, and he sought "damages under the doctrine of respondeat superior from Marlow, Ryan and Waurika for the negligence of officers Baker, Hall, Castillo and [Brown]." Id. at 4.[5] In a separate, and subsequent action (No. 96-6229 on appeal), he sought damages from Lieutenant Walker and Police Chief Brackett, in their individual capacities, based upon their status as supervisors who "set in motion a series of acts by others, which they knew or reasonably should have known, would cause others to inflict constitutional injury."

---

[5]This argument, if premised on § 1983, clearly fails. The Supreme Court has repeatedly and unequivocally stated that "a municipality cannot be held liable solely because it employs a tortfeasor -- or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." Monell v. Dep't of Social Servs., 436 U.S. 658, 691 (1978); see also Bryan County v. Brown, 117 S. Ct. 1382, 1388 (1997); Wilson v. Meeks, 98 F.3d 1247, 1255 (10th Cir. 1996) (noting that the Supreme Court has "explicitly rejected municipal liability based on either a respondeat superior or vicarious liability theory."). As a claim of respondeat superior liability under state law, the district court correctly held that Mr. Rowe would have to establish that the officers were negligent and that their negligence proximately caused Alysia's death, which it held Mr. Rowe failed to do.

Appellant's Br. (No. 96-6229) at 3.[6]  He also sought damages from the City of Marlow

"because Walker and Brackett are liable under § 1983, in their official capacities, as

official municipal policy makers for failure to train, failure to supervise, and failure to

promulgate adequate high speed pursuit policies."  Id.

The district court entered summary judgment in appeal No. 96-6144 against Mr.

Rowe on all of his § 1983 and supplemental state claims, concluding that:  (1) Officers

Baker, Hall, and Castillo did not seize Alysia under the Fourth Amendment; (2) Officers

Baker, Hall, and Castillo did not violate Alysia's substantive due process rights under the

Fourteenth Amendment; (3) Officers Baker, Hall, and Castillo are entitled to qualified

immunity; (4) the municipalities of Marlow and Ryan are not liable; and (5) the conduct

of Alysia Rowe was the proximate cause of her death, and the defendants were therefore

not liable in negligence under Oklahoma law.  The court subsequently held, in appeal No.

96-6229, that Mr. Rowe's claims against Lieutenant Walker and Chief Brackett in their

individual and official capacities, and the claim against the City of Marlow, necessarily

fail because it had previously held (in No. 96-6144) that officers Baker and Hall did not

violate Alysia's Fourth or Fourteenth Amendment rights.

---

[6]Lieutenant Walker was the senior officer on duty at the time of the pursuit, and
was therefore the supervisor of officers Hall and Baker.

## DISCUSSION

We review de novo the grant of summary judgment, applying the same legal standard as did the district court. Carl v. City of Overland Park, 65 F.3d 866, 868 (10th Cir. 1995). Summary judgment is appropriately granted if, viewing the record in the light most favorable to the non-moving party (Mr. Rowe), there is no genuine issue of material fact and the defendants are entitled to judgment as a matter of law. Id.

### I. Fourth Amendment

Mr. Rowe claims that Officers Baker, Hall and Castillo "seized" Alysia, in violation of the Fourth Amendment, by pursuing her into the "T" intersection where she crashed. We disagree.

In Brower v. County of Inyo, 489 U.S. 593 (1989), the Supreme Court held that the police seized a suspect they had pursued at high speed when the suspect crashed into a roadblock deliberately set up by the police to stop the suspect. The Court stated that a Fourth Amendment seizure only occurs "when there is a governmental termination of freedom of movement through means intentionally applied." Id. at 597. Because the roadblock in Brower was "not just a significant show of authority to induce a voluntary stop, but [was] designed to produce a stop by physical impact if voluntary compliance [did] not occur," id. at 598, the suspect was seized when he collided with it.

The Court distinguished such a seizure from a hypothetical situation identical to this case: there is "no seizure" when there is "a police chase in which the suspect unexpectedly loses control of his car and crashes." Id. at 595; see also Galas v. McKee, 801 F.2d 200 (6th Cir. 1986) (finding no Fourth Amendment violation when police pursued at high speed a thirteen-year-old driving his parents' car without permission, and he lost control, crashed, and was seriously injured). That is so because "[t]he pursuing police car sought to stop the suspect only by the show of authority represented by flashing lights and continuing pursuit; and though he was in fact stopped, he was stopped by a different means -- his loss of control of his vehicle and the subsequent crash." Brower, 489 U.S. at 597; see also Bella v. Chamberlain, 24 F.3d 1251, 1256 (10th Cir. 1994) (holding that shots fired at plaintiff did not constitute a seizure because they "constituted an assertion of authority, but they did not cause [the plaintiff] to submit nor did they otherwise succeed in stopping him") (footnotes omitted); Rosado v. Deters, 5 F.3d 119, 123 (5th Cir. 1993) (holding that officer's "pursuit alone cannot constitute a seizure").

In this case, the officers' assertion of authority (their pursuit of Alysia with lights and sirens activated, their placement of their police cars in various ways to attempt to slow her down or stop her) did not cause her to submit or stop. Rather, she stopped only when she entered the "T" intersection at a high rate of speed, despite warnings that she needed to stop, lost control of the van and crashed. In sum, her freedom of movement was not stopped by "means intentionally applied." Brower, 489 U.S. at 597. It was

-10-

stopped when she lost control of her car at a dangerous intersection.  See Galas, 801 F.2d at 202-04.

Moreover, the uncontroverted facts of this case do not support Mr. Rowe's argument that the officers, in essence, forced Alysia into the "T" intersection and caused her to lose control and crash, much as the officers in Brower forced the suspect into the roadblock.  The roadblock in Brower allegedly was placed across both lanes of the road, around a curve, was unilluminated, and included a police car placed in front of the roadblock with its lights on, effectively blinding the suspect.  The Court held those facts sufficiently alleged a seizure under the Fourth Amendment.  That is a vastly different situation from the one here--Alysia drove at high speed some 76 miles along a rural highway, past numerous roadblocks and police cars, and past numerous places where she could have safely slowed down and stopped the van.  Significantly, as the district court found, the pursuing officers slowed down, and backed off their pursuit, as she approached the intersection, for the very purpose of preventing her from being "forced" into the intersection.  We therefore affirm the district court's conclusion that no Fourth Amendment violation occurred.

## II. Fourteenth Amendment

Mr. Rowe also argues that, even if there was no Fourth Amendment violation, Officers Baker, Hall and Castillo violated Alysia's Fourteenth Amendment substantive due process rights "by depriving her of her life with deliberate, reckless intent." Appellant's Br. (No. 96-6144) at 14. We have held in this circuit that "a government official violates an individual's Fourteenth Amendment rights by injuring his or her life, liberty, or property interest with deliberate or reckless intent." Webber v. Mefford, 43 F.3d 1340, 1343 (10th Cir. 1994); see also Medina v. City and County of Denver, 960 F.2d 1493, 1496 (10th Cir. 1992). Further, "[a]n act is reckless when it reflects a wanton or obdurate disregard or complete indifference to risk, for example 'when the actor does not care whether the other person lives or dies, despite knowing that there is a significant risk of death' or grievous bodily injury." Id. at 1496 (quoting Archie v. City of Racine, 847 F.2d 1211, 1219 (7th Cir. 1988) (en banc)).[7]

---

[7]We issued an opinion in Williams v. City and County of Denver, 99 F.3d 1009 (10th Cir. 1996), vacated and reh'g en banc granted, No. 94-1190 (10th Cir. March 3, 1997), in which we held that, under Collins v. City of Harker Heights, 503 U.S. 115 (1992), "a substantive due process violation requires (1) that the defendant act with reckless intent, and (2) that the defendant's conduct shock the conscience." Williams, 99 F.3d at 1015. We have subsequently vacated our opinion in Williams. The Supreme Court has granted certiorari in a case in order to address the legal standard of conduct necessary to establish a substantive due process violation in a police pursuit case. Lewis v. Sacramento County, 98 F.3d 434 (9th Cir.), cert. granted, 65 U.S.L.W. 3793, 3798 (U.S. June 2, 1997) (No. 96-1337). One of the questions which has divided circuit courts, and which has been presented to the Supreme Court in Lewis, is whether an officer's conduct must "shock the conscience" or display "deliberate indifference" or "reckless
(continued...)

We affirm the district court's conclusion that the uncontroverted facts in this case establish that the officers did not violate Alysia's Fourteenth Amendment rights, by depriving her of life "with deliberate or reckless intent," Webber, 43 F.3d at 1343, when they pursued her van, and she ultimately, and tragically, crashed and was killed. When the officers first observed Alysia, she was already speeding, some 44 miles per hour over the speed limit. They began pursuing her with lights and sirens activated. She continued to drive at excessive speeds, through towns and cities, past other police cars with their lights and sirens activated, past roadblocks which were intended to stop her without causing her harm. Officer Baker testified that, by the time the Rowe van had neared the "T" intersection, it had "[run] four roadblocks," Appellant's App. (No. 96-6144) Vol. 2 at 401, and several officers believed she deliberately attempted to ram their vehicles. The officers were uncertain whether she was alone in the van or a willing, or unwilling, passenger. In sum, her actions clearly gave the officers reason to believe that she was a hazard to others on the road, as well as to them. Mr. Rowe has presented no evidence that they pursued the van with "wanton or obdurate disregard or complete indifference" to *Alysia's* safety; rather, the evidence amply supports the view that they attempted to stop an evident hazard to public safety. See Jones v. Sherrill, 827 F.2d 1102, 1107 (6th Cir.

---

[7](...continued)
disregard." As of now, this circuit follows the "deliberate or reckless intent" standard. Were we to apply a "shock the conscience" standard to this case, or any of the other proposed standards, we would still affirm the grant of summary judgment to defendants.

-13-

1987) (observing that "had the officers not pursued [the suspect] and had his unimpeded progress resulted in a fatal accident, as it well could have, the officers might be facing a different section 1983 claim based on their failure to act"). Summary judgment was properly granted to defendants on Mr. Rowe's Fourteenth Amendment claims.

Because we hold that the pursuing officers did not violate Alysia's constitutional rights, we need not address whether they were entitled to qualified immunity. Mr. Rowe also attempts to hold Police Chief Brackett and Lieutenant Walker liable individually for "set[ting] in motion a series of acts by others, which they knew or reasonably should have known, would cause others to inflict constitutional injury." Appellant's Br. (No. 96-6229) at 3. Because we have held that the pursuing officers inflicted no constitutional injury, Chief Brackett and Lieutenant Walker are not individually liable either.

### III. Municipal Liability

The district court held that the claims against the municipalities and against the supervisory officers, Chief Brackett and Lieutenant Walker, in their official capacities, necessarily fail because the court had concluded that no individual officer violated Alysia's constitutional rights. Mr. Rowe argues that the claims against the municipalities should only be dismissed if their claimed liability was derivative of the individual officers' liability. Where, as here, the plaintiff claims both derivative and direct liability, Mr. Rowe argues a municipality may be directly liable. He argues that the municipalities,

and Chief Brackett and Lieutenant Walker, failed to develop an adequate pursuit policy, failed to train officers in pursuit procedures, and failed to supervise those officers, in general and, in particular, in the pursuit of Alysia.

In City of Los Angeles v. Heller, 475 U.S. 796 (1986) (per curiam), the Supreme Court held that a jury verdict acquitting a police officer of using excessive force in making an arrest precluded a finding of municipal liability. "If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point." Id. at 794; see also Hinton v. City of Elwood, 997 F.2d 774, 782 (10th Cir. 1993). We have relied on both Heller and Hinton to hold that "[a] claim of inadequate training, supervision, and policies under § 1983 cannot be made out against a supervisory authority absent a finding of a constitutional violation by the person supervised." Webber, 43 F.3d at 1344-45; see also Wilson v. Meeks, 98 F.3d 1247, 1255 (10th Cir. 1996) ("The district court correctly concluded no municipal liability could be found in this case because there was no constitutional violation committed by any of the individual defendants."). The Supreme Court's recent decision in Bryan County v. Brown, 117 S. Ct. 1382 (1997) confirms that municipal liability for failure to train or supervise requires a finding that the muncipality's deliberate indifference "led an employee to violate a plaintiff's rights" or "failed to prevent tortious conduct by employees." Id. at 1390.

-15-

Without deciding the issue here, to the extent some other claim of direct municipal liability could be made, even in the absence of a finding that the employee violated the plaintiff's constitutional rights, as a panel of this court recently held in <u>Williams</u>, which was subsequently vacated, no such claim prevails in this case.

We therefore affirm the district court's conclusion that the municipalities in this case cannot be liable when no individual officer has violated Alysia's constitutional rights.

## IV.  Supplemental State Law Claim

Mr. Rowe also claims that under Oklahoma law, a municipality can be liable for the acts of its police officers if they negligently cause injury.[8]  The district court granted summary judgment to the municipal defendants on this claim, holding:

> Summary judgment is appropriate on the negligence claim because Alysia Rowe, not the officers, was the proximate cause of her death.  Alysia Rowe's decision to elude the police and drive at speeds over 80 miles an hour on unfamiliar roads was the cause of her death. Contrary to plaintiff's assertions, it is highly speculative that Alysia would have stopped had the officers abandoned their chase.

Order at 13, Appellant's App. (No. 96-6144) Vol. 2 at 490.  We agree.

---

[8]As the district court found, and Mr. Rowe does not appear to object,  Oklahoma law bars claims against the individual officers:  "[I]n no instance shall an employee of the state or political subdivision acting within the scope of his employment be named as defendant . . . ."  Okla. Stat. tit. 51, § 163(C).

Nobody disputes that proximate cause is an essential element of a negligence claim. Mr. Rowe argues that the issue of whether the conduct of the police officers proximately caused Alysia's death is for the jury. However, the Oklahoma Court of Appeals has stated that "[w]here the facts of a case are undisputed, the issue of proximate cause is a question for the court." Kelly v. City of Tulsa, 791 P.2d 826, 829 (Okla. Ct. App. 1990). The Kelly court further stated, with approval, that "the majority of jurisdictions addressing this issue refuse to impose liability on the officer for the independent acts of a law offender." Id. We agree with the district court that the undisputed facts of this case show that Alysia's own conduct in continuing to drive at night at high speeds along unfamiliar roads, past numerous police vehicles signaling her to stop, proximately caused her crash and death. See Carl, 65 F.3d at 873 (noting that the Kansas Supreme Court had "endorsed numerous vehicle pursuit cases from the majority of states that have similarly refused to hold officers liable 'for the acts of the fleeing violators'") (quoting Thornton v. Shore, 666 P.2d 655, 662 (Kan. 1983)).[9] It is pure speculation that she would have stopped had the police stopped their pursuit. Accordingly, neither the officers, nor their supervisors, nor the municipalities may be liable in negligence for Alysia's death.

_____

[9]Both Carl and the Oklahoma case of Kelly relied upon the Kansas Supreme Court's opinion in Thornton.

For the foregoing reasons, we AFFIRM the district court's grant of summary

judgment to defendants on all claims in these appeals.

ENTERED FOR THE COURT


Stephen H. Anderson
Circuit Judge